Bell, J.
 

 We have no difficulty with the proposition that plaintiff is entitled to a recovery. The real controversial question is whether National or Columbia or both shall be held liable.
 

 The precise question involved has never been determined by this court, however the court has on numerous occasions announced certain principles of law applicable to the construction of indemnity insurance policies, which are important in the consideration of the specific question presented. From the decided cases the following general rules may be deduced.
 

 One. A contract of indemnity insurance should be construed in the light of the subject matter with which the parties are dealing and the purpose to be accomplished.
 

 Two. The language used in a contract of indemnity insurance should be construed in its ordinary and commonly accepted meaning.
 

 Three. Where the language used in a policy is chosen by the insurer, in case of ambiguity therein, the terms and conditions thereof will be construed most favorably to the insured.
 

 With these general principles in mind we shall first direct our attention to the liability of National under the provisions of the automobile indemnity insurance policy issued by it.
 

 The insuring agreement reads in part as follows:
 

 ‘ ‘ Coverage B — Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability
 
 *220
 
 imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or
 
 use of the automobile.
 

 Under the heading “Conditions” this language is used:
 

 “2. Purposes of Use Defined, (a) The term ‘pleasure and business’ is defined as personal, pleasure, family and business use. (b) The term ‘commercial’ is defined as the transportation or delivery of goods, merchandise or other materials,
 
 and uses incidental thereto, in direct connection with the named insured’s business occupation as expressed in Item 1.
 
 (c) Use of the automobile for the purposes stated includes the
 
 loading and unloading
 
 thereof.”
 

 Item I defines the insured’s “business occupation” as “Appliance Installation Service.”
 

 The liability of this defendant is dependent upon the answer to two questions.
 

 First. Did the damage complained of occur during the process of
 
 loading or unloading
 
 the truck?
 

 Second. Was the damage caused by an incidental-use of the truck in connection with the plaintiff’s “business occupation”?
 

 National knew that the plaintiff’s business, at least in part, consisted in the pickup, delivery and installation of appliances for customers.
 

 In the statement of the first cause of action -it is claimed the damage occurred while a stove was being carried from a store by plaintiff’s employees to be loaded into the truck, for delivery to a customer; and in the statement of the third cause of action it is claimed that the damage occurred while a stove was being taken from the truck by plaintiff’s employees into the house of a customer.
 

 From a consideration of the entire policy it seems clear that it was the intention of the parties to cover
 
 *221
 
 liability arising in some instances when the truck was stationary. Unless this be true the provision as to
 
 loading and unloading
 
 is meaningless as it could hardly be claimed that
 
 loading or unloading
 
 could take place while the truck was in motion.
 

 The phrase
 
 loading and unloading
 
 is the language of National and that phrase is nowhere defined in the policy. It would have been an easy matter to provide what should constitute
 
 loading and unloading
 
 within the meaning of the policy had National chosen so to do. The policy in that respect is ambiguous and that phrase must be construed most favorably to the plaintiff.
 

 It is often difficult to determine when
 
 loading
 
 begins and
 
 unloading
 
 ends. The plaintiff could not fulfill his contract to his customers to deliver and install appliances unless such appliances first were loaded upon the truck at the point of origin and later unloaded and delivered at the point of destination. Delivery and installation were the main purposes of the haul.
 

 When then does the loading begin and the unloading cease? We think that the loading begins when the employees of the plaintiff connected with the truck receive the article and as part of a continuing operation place it upon the truck; and that the unloading ceases when the article is taken from the truck by such employees and as part of a continuing operation is delivered to the customer or to the place designated for delivery.
 

 This view is consistent with the principles of construction applying to contracts of indemnity and finds support in the following authorities:
 
 State, ex rel. Butte Brewing Co.,
 
 v.
 
 District Court,
 
 110 Mont., 250, 100 P. (2d), 932;
 
 Owens
 
 v.
 
 Ocean Accident & Guarantee Corp., Ltd.,
 
 194 Ark., 817, 109 S. W. (2d), 928;
 
 Lang
 
 v.
 
 Jersey Gold Creameries, Inc.,
 
 (La. App.), 172 So., 389;
 
 Panhandle Steel Products Co.
 
 v.
 
 Fidelity Un
 
 
 *222
 

 ion Casualty Co.
 
 (Tex. Civ. App.), 23 S. W. (2d), 799;
 
 Maryland Casualty Co.
 
 v.
 
 Tighe,
 
 29 P. Supp., 69;
 
 Wheeler
 
 v.
 
 London Guarantee & Accident Co.,
 
 292 Pa., 156, 140 A., 855;
 
 Merchants Co.
 
 v.
 
 Hartford Accident & Indemnity Co.,
 
 187 Miss., 301;
 
 Quality Dairy Co. v. Ft. Dearborn Casualty Underwriters
 
 (St. Louis Mo. App.), 16 S. W. (2d), 613;
 
 Roche
 
 v.
 
 U. S. Fidelity & Guaranty Co.,
 
 247 N. Y. App. Div., 335, 287 N. Y. Supp., 38.
 

 In the case of
 
 American Oil & Supply Co. v. U. S. Casualty Co.,
 
 19 N. J. Misc., 7, 18 A. (2d), 257, the facts were as follows: Plaintiff’s employee delivered two bottles of acid to a customer. He parked his track at the curb, took the two bottles off the truck and carried them into the customer’s place of business While setting them on a rack, one bottle broke and damaged merchandise. The customer sued the assured and the insurer refused to defend on an automobile policy insuring the assured against accidents “by reason of the ownership, maintenance, or use of any automobile or trailer described in the schedules of statements, including the loading and unloading of such automobiles or trailer.”
 

 The court, in holding the insurer liable under its policy, said:
 

 “An accident to have occurred in the unloading of a truck must occur after something is done to change the conditions from the transportation or the mere standing of the truck after it is stopped, and as commonly understood it is the removing of the load or the part that is being unloaded, from the time that that operation is started until that operation is finished. And it is my view that the operation of unloading in the instant case continues from the time the bottles started to be moved on the truck so as to start unloading until they next came to rest off the truck.”
 

 
 *223
 
 A leading case upon this subject is
 
 State, ex rel. Butte Brewing Co.,
 
 v.
 
 District Court, supra.
 

 In that case, as here, two indemnity policies were involved, one an automobile indemnity policy and the other a public liability policy. The policies in that case contained provisions similar to the policies here under consideration.
 

 That action was one in the nature of a declaratory judgment to construe the public liability policy covering accidents away from the insured premises, but .excluding accidents caused by vehicles, including the loading and unloading thereof, and to construe an automobile policy covering commercial vehicles, including the loading and unloading thereof. The assured’s servant took a barrel of beer from the truck and placed it on the sidewalk near the customer’s premises. The employee then opened a cellar door, preparatory to lowering the beer through the door, and as the door was lifted a pedestrian stepped upon it and sustained serious injuries. Both insurance companies involved declined to defend the action.
 

 The court held that under the facts of the case
 
 the unloading of the truck ivas a continuous operation
 
 from the time the truck came to a stop and the transportation ceased until the beer was delivered to the customer; that the unloading was not completed when the barrel was placed upon the sidewalk; and that, from the standpoint of loading, such operation would embrace the entire process of moving the commodities from their accustomed place of storage until they were placed upon the truck. The court held that the automobile indemnity policy provided coverage. As to the public liability policy, the court held that, it having been found that the injuries arose during unloading, then under the express language of the public liability policy, the company issuing that policy was exempt from liability.
 

 
 *224
 
 We are not unmindful of decisions which seem to hold to the contrary, among which are
 
 Stammer
 
 v.
 
 Kitzmiller,
 
 226 Wis., 348, 276 N. W., 629;
 
 Zurich General Accident & Liability Ins. Co., Ltd.,
 
 v.
 
 American Mutual Liability Ins. Co. of Boston,
 
 118 N. J. Law, 317, 192 A., 387;
 
 Jackson Floor Covering, Inc.,
 
 v.
 
 Maryland Casualty Co. of Baltimore, a Corp.,
 
 117 N. J. Law, 401, 189 A., 84.
 

 We find it unnecessary to discuss these cases at length. Suffice it is to say that each is distinguishable from the instant case either in its facts or in the form of the contract.
 

 The policy here under consideration further provides that “the term ‘commercial’ is defined as the transportation or delivery of goods, merchandise or other materials, and uses incidental thereto, in direct connection with the named insured’s business occupation as expressed in Item I. ’ ’
 

 It has already been pointed out that the business of the plaintiff was the pickup, delivery and installation of appliances. Can it be said that the damage complained of did not grow out of a use incidental to the transportation and delivery of merchandise? We think not.
 

 In the case of
 
 Maryland Casualty Co.
 
 v.
 
 Cassetty,
 
 119 F. (2d), 602, the United States Circuit Court of Appeals, in considering a policy which contained almost the identical language above quoted, used this language at page 604:
 

 “The policy here undertakes to indemnify the assured against loss because of bodily injuries arising out of the ownership, maintenance or use of the automobile and this phrase includes the ‘loading or unloading’ thereof and the transportation or delivery of goods. G-iving effect to the entire policy, it is clear it was intended by the parties to cover liability arising in some instances when the truck was stationary. If
 
 *225
 
 the unloading of the truck or its use in the transportation or delivery of goods was the efficient and predominating cause of appellee’s injuries, we need look no further in determining liability under the policy.”
 

 We think that those cases granting a liberal construction to the provisions of automobile indemnity policies with reference to the ownership, maintenance and use of the automobile and the uses incidental thereto including loading and unloading thereof are consistent with the general principles of construction of such policies heretofore established in this state.
 

 This court by a long line of decisions has placed the state of Ohio among those jurisdictions which give a liberal construction to this class of instruments.
 

 The insurance company chooses the language used in the contract and the insured has no voice therein. Under such circumstances both logic and precedent •dictate that in case of any doubt the insured should be given the benefit of the doubt.
 

 We conclude therefore that the loss was covered by the automobile indemnity policy.
 

 We now direct our attention to the policies issued by Columbia.
 

 Having decided that the damage arose out of the ownership and use of the truck the policies of Columbia must be construed • in the light of that conclusion.
 

 One of Columbia’s policies, as it pertains to property damage, contains these provisions:
 

 “Insuring Agreement
 

 “To insure the assured against loss by reason of the liability imposed by law upon the assured for damages, on account of damage to or destruction of property (including loss of use thereof and damage or destruction by fire), as the result of an accident * * * except as to any operations or exposures which are shown to be excluded elsewhere in this endorsement,
 
 *226
 
 and subject further to all exclusions, conditions and limitations hereinafter contained.”
 

 In “Standard Exclusions” is found this language:
 

 “This endorsement shall not cover damage or destruction * * * caused * * *
 
 by any automobile, * * * {or the loading or unloading thereof)
 
 while such vehicle
 
 *
 
 * * is being used or operated elsewhere than upon the premises occupied by and under the control of the assured or upon the public ways immediately ad j oining. ’ ’ (Italics ours.)
 

 The other policy contains almost identical provisions.
 

 There is no evidence that the truck was being used or operated upon premises occupied or controlled by the plaintiff or upon the public ways immediately adjoining when the damage occurred. The record discloses quite the contrary.
 

 Therefore by reason of the exclusion provision of the policy above quoted Columbia is not liable for the damages in this case.
 

 It follows that the Court of Appeals erred in affirming the judgment of the Municipal Court and that its judgment should be and hereby is reversed. Coming now to render the judgment which the Court of Appeals should have rendered, judgment will be entered in favor of the plaintiff against the defendant National Casualty Company and in favor of the defendant Columbia Casualty Company.
 

 Judgment accordingly.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Williams and Turner, JJ., concur.