TRAVELERS INSURANCE CO., Plaintiff-Appellant, v.
BUCKEYE UNION CASUALTY COMPANY et,
Defendants-Appellees.

Ohio Appeals, Tenth District, Franklin County.

No. 6248. Decided September 16, 1960.

*Messrs. Wright, Harlor, Morris, Arnold & Glander,* and *Mr. H. Bartley Arnold,* for plaintiff-appellant.

*Messrs. Power, Griffith & Jones, Mr. Sidney D. Griffith* and *Mr. William H. Schneider,* for The Buckeye Union Casualty Company, defendant-appellee.

*Messrs. Graham, Graham, Gottlieb & Johnston* and *Mr. Harold E. Gottlieb,* for John Keiser, defendant-appellee.

(McLaughlin, J., of the Fifth Appellate District, sitting by designation in the Tenth District.)

For fur-ther history see *Omnibus Index* in bound volume.

Bryant, P. J. This is an appeal of a declaratory judgment action to determine the respective liabilities of two casualty insurance companies and involves the interpretation of the "loading and unloading" clause in an automobile liability insurance policy. Perhaps the principal question is whether, in the case of a tank truck which had been driven onto the loading platform of a bulk station, under the agreed facts, loading had begun. The suit for a declaratory judgment was begun in the court below by The Travelers Insurance Company, a plaintiff-appellant, herein called Travelers. Defendants-appellees are The Buckeye Union Casualty Company, herein called Buckeye, and John Keiser. The facts are not in dispute and at the close of the opening statement by Travelers, certain agreed exhibits were admitted and a motion for judgment on the pleadings was made, which the trial court sustained. Several errors are assigned but all of them relate to the propriety of this decision.

R. T. McCracken was the owner of a tank truck, the operation of which was insured in an automobile liability insurance policy issued by Buckeye. Keiser was a truck driver employed by McCracken. Buckeye's insurance policy covered the use of the automobile for business, pleasure and commercial uses, and such uses by express terms of the policy include the loading and unloading thereof.

The Gulf Refining Company, herein called Gulf, operated a bulk station in Zanesville from which diesel fuel was sold. Gulf was the insured in a policy of premises liability insurance issued by Travelers. This policy insured Gulf against liability for damages resulting from bodily injury, sickness or disease including death caused by accident. It covered the use of owned, hired and non-owned automobiles and such use was defined as including loading and unloading.

However, Travelers' policy also provided that if Gulf had other insurance against a loss covered by Travelers' policy, the liability should be borne proportionately, and further that the insurance under Travelers' policy in case of loss from use of a non-owned automobile shall be excess insurance over any other valid and collectible insurance available to Gulf.

On April 6, 1954, Keiser drove McCracken's tank truck to the Gulf bulk station to purchase a tank load of diesel fuel for McCracken. Keiser drove the truck onto the loading platform, stopped the truck, got out of the cab and climbed up onto the bed of the truck. He removed the cover from the opening in the tank. The station was equipped with movable overhead pipes for the filling of tank trucks and an employee of Gulf moved a pipe toward the truck in order to fill it. As the pipe got near the truck, a quantity of diesel fuel rushed out onto Keiser causing him to lose his balance. He fell from the truck to the ground sustaining personal injuries.

Thereafter, Keiser filed suit against Gulf in the federal court claiming that his injuries were a result of the negligence of the Gulf employee and praying for $100,000 damages. It was the claim of Travelers, after Keiser's suit was filed, that Buckeye's policy covered Gulf because McCracken's truck was being loaded at the time of the accident, but that Buckeye refused to act. This was on the claim that Buckeye's insurance policy covered anyone else who was using the truck with McCracken's consent, that McCracken had consented to such use and hence that Gulf was protected under the policy issued by Buckeye.

Travelers also claimed that as a result, Buckeye was primarily liable up to the limits of its policy for any judgment or settlement as a result of the federal court suit, that Buckeye was under a duty to defend Gulf and that although demand had been made on Buckeye, it refused to admit liability.

Pertinent portions of the insurance policy issued by Travelers to Gulf are as follows:

"The Travelers Insurance Company * * * agree with the insured, named in the declarations made a part hereof, * * * subject to the limits of liability, exclusions, conditions and other terms of this policy, provided The Travelers Insurance Com-

pany shall be the insurer with respect to Coverage A and no other * * *:

"Insuring Agreements

"1. Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

* * * * * *

"Conditions

"The conditions, except conditions 7, 9, 10 and 11, apply to all coverages. * * *

"* * *

"3. Definitions. * * *

"(b) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

"(1) Owned Automobile—an automobile owned by the named insured;

"(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;

"(3) Non-Owned Automobile—any other automobile.

"* * *

"(e) Purposes of Use. * * * Use of an automobile includes the loading and unloading thereof.

"* * *

"12. Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insur-

ance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise. * * *''

Pertinent portions of the insurance policy issued by Buckeye to McCracken are as follows:

''Declarations

'' * * *

''Item 5. The purposes for which the automobile is to be used are business, pleasure and commercial. * * *

''(c) Use of the automobile for the purposes stated includes the loading and unloading thereof.

'' * * *

''The Buckeye Union Casualty Company * * * agrees with the Insured, named in the Declarations made a part hereof, * * * subject to the limits of liability, exclusions, conditions and other terms of this policy:

''Insuring Agreements

''I. Coverage A—Bodily Injury Liability—To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile. * * *

''II. Defense, Settlement, Supplementary Payments. As respects the insurance afforded by the other terms of this policy under Coverages A and B the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on acount thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * * (c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon; * * * The amounts incurred under this insuring agreement, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

"III. Definition of 'insured.' With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply; (a) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof, but this exclusion does not apply to a member of the same household as the named insured; (b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

Under the heading, "Exclusions," the following language is used:

"This policy does not apply * * * (d) under coverages A and C, to bodily injury to, or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law; (e) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law * * *."

The principal contentions of plaintiff-appellant may be found in the two final paragraphs of the amended petition and the prayer thereof reading as follows:

"Plaintiff further says that the injuries and damages claimed by Keiser arose out of the use of a non-owned automobile under the provisions of plaintiff's policy, and arose out of the said truck under the provisions of the policy of defendant, The Buckeye Union Casualty Company; that, according to the claims of defendant, John Keiser, Gulf Refining Company was legally responsible for the use of the truck, to-wit, the loading thereof, and such use was by R. T. McCracken or

with his permission; that accordingly Gulf Refining Company is an 'insured' under the policy of defendant, The Buckeye Union Casualty Company, and is entitled to coverage thereunder against the aforesaid claims of defendant, John Keiser; that the defendant, The Buckeye Union Casualty Company, is required to defend said Case No. 4619 on behalf of Gulf Refining Company; and that the insurance afforded Gulf Refining Company under plaintiff's policy is excess insurance over the insurance available to Gulf Refining Company under the policy of defendant, The Buckeye Union Casualty Company.

"Plaintiff further says that it has requested defendant, The Buckeye Union Casualty Company, to assume its obligations to Gulf Refining Company under its aforesaid policy of automobile liability insurance, and undertake the defense of said Case No. 4619, and to assume, up to the limits of its policy, the responsibility for any judgment that may be therein rendered against, or any settlement which in connection therewith may be made on behalf of, Gulf Refining Company; and that defendant, The Buckeye Union Casualty Company, has declined and refused to do so.

"WHEREFORE, plaintiff prays the declaratory judgment of this Court that, with respect to the aforesaid claims of John Keiser, Gulf Refining Company is an insured under the policy of The Buckeye Union Casualty Company and is entitled to coverage thereunder; that the coverage afforded to Gulf Refining Company under the plaintiff's policy is excess over such coverage under the policy of defendant, The Buckeye Union Casualty Company; that The Buckeye Union Casualty Company is required to undertake the defense of said Case No. 4619 on behalf of Gulf Refining Company and to assume, up to the limits of its policy, the responsibility for any judgment that may be therein rendered against, or any settlement which in connection therewith may be made on behalf of, Gulf Refining Company; and for such other and further relief to which plaintiff may be entitled in the premises, including its costs herein expended."

Thus it will be seen that the court below with respect to Keiser's suit against Gulf was asked to determine (1) that Gulf was an insured under Buckeye's policy and is entitled to cover-

age thereunder; (2) that the coverage of Gulf by Travelers was excess insurance over that of Buckeye; (3) that Buckeye is duty-bound to defend Gulf and (4) that Buckeye must assume to the limits of its policy the liability for any judgment or settlement from the federal court suit.

By agreement of the parties, all questions as to liability under a judgment or settlement were withdrawn and the court expressly stated it did not consider such questions in arriving at its decision. The journal entry of the court below determined (1) that there was a justiciable controversy between Travelers, Buckeye and Keiser but (2) that Gulf was not an insured under Buckeye's policy and hence (3) that Buckeye was under no duty to defend Gulf for the reason that under the facts in the case, movement of the load had not begun and hence loading had not started.

The court below relied upon the case of *Bobier* v. *National Casualty Co.*, 143 Ohio St., 215. The fourth branch of the syllabus in that case reads as follows:

" 'Loading,' as used in such insurance policy, begins at the time the insured or his agents or servants connected with the truck, receive the article and, as part of a continuing operation, place it upon the truck; and 'unloading' ceases when the article is taken from the truck by such employees and, as part of a continuing operation, is delivered to the customer or to the place designated for delivery."

In course of the opinion by Bell, J., at page 221, there appears the following:

"The phrase loading and unloading is the language of National and that phrase is nowhere defined in the policy. It would have been an easy matter to provide what should constitute loading and unloading within the meaning of the policy had National chosen so to do. The policy in that respect is ambiguous and that phrase must be construed most favorably to the plaintiff.

"It is often difficult to determine when loading begins and unloading ends. The plaintiff could not fulfill his contract to his customers to deliver and install appliances unless such appliances first were loaded upon the truck at the point of origin and later unloaded and delivered at the point of destination. Delivery and installation were the main purposes of the haul.

"When then does the loading begin and the unloading cease? We think that the loading begins when the employees of the plaintiff connected with the truck receive the article and as part of a continuing operation place it upon the truck; and that the unloading ceases when the article is taken from the truck by such employees and as part of a continuing operation is delivered to the customer or to the place designated for delivery."

From the Bobier case, supra, and the other authorities which he considered, the court below concluded that loading began when the load was set in motion, that movement of the load of diesel fuel had not started, that Keiser was still in charge of the truck, and that Keiser had never touched the loading pipe with the final conclusion that loading therefore, had not begun.

At the very best, a case involving the moving of a gas stove is not exactly in point where liquid fuel is involved. While the exact question is still an open one in Ohio, we think that the holding of the lower court is supported by considerable reason and logic. Being of this opinion, no useful purpose will be served by discussing whether or not the bulk station was or was not a sales agency or service station, whether or not there was an exclusion in case the employee was covered by workmen's compensation, and whether or not the pending lawsuit has become moot due to the dismissal with prejudice of the federal court suit.

For the reasons above set forth we are of the opinion that the several assignments of errors are not well taken and must be overruled and the judgment of the lower court affirmed and we expressly hold there was a justiciable controversy between the parties.

McLaughlin, J., concurs.
Duffy, J., dissents.

Duffy, J., dissents. Since the entry of the trial court shows that in ruling on the motion for judgment on the pleadings and opening statement of plaintiff that "exhibits received in evidence" were considered in arriving at his decision, the judg-

ment is subject to a reversal. The motion should present only a question of law raised by the pleadings and evidence should not be considered.

In this case the pleadings show that a factual question involving the negligence of Gulf Refining Company must be considered and was considered by the court. While the court might have reached the right result, he should not have decided the question of fact at that stage of the proceeding. See *Knight* v. *Strong et al.*, 101 Ohio App., 347, and *Home Owners' Service Corp.* v. *Hadley et al.*, 86 Ohio App., 340, 84 N. E. (2d), 314.