MILLER

v.

THE HARTFORD, a.k.a. Hartford Casualty Insurance Company, et al.█

[ 2001-Ohio-4371.]

Court of Common Pleas of Ohio,
Lake County.

No. 00CV001234.

Decided July 5, 2001.

Ralph Buss, for plaintiff.

David L. Lester, for defendant Hartford Casualty Insurance Company.

Thomas W. Wright and Dennis R. Fogarty, for Cincinnati Insurance Companies.

---

EUGENE A. LUCCI, Judge.

{¶ 1} This matter came on to be heard on the following:

{¶ 2} Defendant Cincinnati Insurance Company's motion for summary judgment, filed May 22, 2001;

{¶ 3} Plaintiff's brief in opposition to Cincinnati's motion for summary judgment, and plaintiff's cross-motion for partial summary judgment, filed June 5, 2001;

{¶ 4} Defendant Cincinnati's reply brief in support of its motion for summary judgment and in opposition to plaintiff's cross-motion for partial summary judgment, filed June 15, 2001;

{¶ 5} Plaintiff's brief in reply to defendant Cincinnati's brief in opposition to plaintiff's cross-motion for partial summary judgment, filed June 18, 2001.

{¶ 6} For the following reasons, defendant Cincinnati's motion for summary judgment is well taken and is hereby granted, and plaintiff's cross-motion for partial summary judgment is not well taken and is hereby denied.

## FACTS

{¶ 7} The following material facts are undisputed:

{¶ 8} On December 2, 1998, an individual named Kimberly Ivary drove her motor vehicle into a motorcycle that was owned and operated by plaintiff Eugene Miller, causing severe injuries to plaintiff. On the date of the collision, plaintiff was employed by the Coe Manufacturing Company ("Coe"). Coe had previously purchased liability insurance from defendant Hartford, which issued policy number 45 UEN CR5122 and listed six corporations, including Coe, and one individual, named Fred Fields, as the named insureds under the policy. The policy limits on that policy are $1 million.

{¶ 9} Coe was also insured by defendant Cincinnati with an umbrella policy, number CCC 445 08 99, listing "Coe Manufacturing Company, Michael Coleman, Controller, Washington Iron Works, a Division of Coe Manufacturing" as named insured. The policy limits are $5 million.

{¶ 10} Defendant Hartford agreed to waive its subrogation rights against Kimberly Ivary, and plaintiff accepted Ivary's offer of $293,000 in settlement of plaintiff's claims against her as the tortfeasor.

{¶ 11} Plaintiff filed this action against defendants Hartford and Cincinnati on July 28, 2000, for declaratory judgment and judgment for breach of contract. This court has already ruled, in accordance with plaintiff's and Hartford's cross-motions for summary judgment, that plaintiff was an insured under Hartford's policy at the time of the subject motor vehicle collision, because Hartford's policy was ambiguous and, when given a reasonable construction, covered plaintiff without being in the course and scope of his employment and without occupying a covered automobile.

{¶ 12} With respect to Cincinnati, plaintiff's complaint seeks to recover insurance proceeds under the underinsured motorist coverage of the umbrella insurance policy that listed his employer, Coe, as one of the named insureds. Specifically, plaintiff seeks to establish underinsured motorist coverage under Cincinnati's policy pursuant to the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, together with an award of compensatory damages under such coverage. Plaintiff also seeks to establish a claim against Cincinnati for material breach of contract based on Cincinnati's refusal to pay appropriate benefits to plaintiff under Cincinnati's policy.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

{¶ 13} In its motion for summary judgment, defendant Cincinnati argues[1] that the issue of uninsured motorist coverage should be decided by first looking at the specific language of the Cincinnati policy. Although the terms of the Cincinnati policy expressly included employees of the named insured in its uninsured motorist coverage, the terms of the policy expressly limited such coverage to those occasions when the employees are acting within the course and scope of employment. At the time of his injuries, plaintiff was not operating his vehicle within the course and scope of his employment. Therefore, defendant argues, plaintiff was not covered by the uninsured motorist provisions of the Cincinnati policy. Defendant Cincinnati further argues that the policy's inclusion of employees as insureds, together with the language defining those employees as insureds while acting within the scope of their duties as such, was an unambiguous expression of uninsured motorist coverage of the kind that was expressly approved by the Ohio Supreme Court in *Scott–Pontzer*.[2]

{¶ 14} In support of its motion for summary judgment, defendant has attached the following documents to its brief in support:

{¶ 15} A copy of the policy, attached to the motion as defendant's exhibit A;

{¶ 16} A copy of excerpts from the deposition of Eugene William Miller, taken in *Eugene W. Miller v. Kimberly R. Ivary*, Lake County Common Pleas Case No. 99CV000872, attached to the motion as defendant's exhibit B;

{¶ 17} A copy of Hartford's motion for summary judgment filed in this case, attached to the motion as defendant's exhibit C.

## PLAINTIFF'S BRIEF IN OPPOSITION

{¶ 18} In response to defendant's motion, plaintiff filed his brief in opposition on June 5, 2001, making the following arguments:

{¶ 19} First, plaintiff argues that the corporate entity, Coe Manufacturing Company ("Coe"), was covered by the Cincinnati policy under the language in Section II, 1., d., which states, "If you are designated in the Declarations as an organization other than a partnership, joint venture, or limited liability company,

1. Defendant Cincinnati filed its motion prior to this court's ruling on the motion for summary judgment filed by defendant, The Hartford. In so doing, defendant Cincinnati based some of its argument on the possibility that this court might grant Hartford's motion. However, Hartford's motion was denied. Accordingly, this court will not address the portion of Cincinnati's argument that was based on the premise that Hartford's motion might be granted.

2. *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 666, 710 N.E.2d 1116.

you are an insured." Since Coe was a corporate insured, plaintiff argues that the holding in *Scott–Pontzer* requires a finding that the use of "you" in Section II, 1., d. is ambiguous as applied to Coe's employees. Plaintiff then argues that the ambiguity must be read strictly against the insurer and liberally in favor of the insured. Therefore, plaintiff argues, the language of the policy must be read to extend uninsured motorist coverage to plaintiff.

{¶ 20} Second, plaintiff argues that he is not barred from coverage under Section II, 2., a. (covering "Any 'executive officer', director, 'employee' or stockholder of yours while acting within the scope of their duties as such"), because this section expands and does not limit or exclude coverage provided under Section II, 1., d. of the policy. Also, plaintiff argues that Section II, 2., a. does not exclude plaintiff from coverage when he is acting outside the scope of his employment.

{¶ 21} Third, plaintiff argues that, since the Cincinnati policy contains exclusions, but Section II, 2., a. *neither excludes* Coe employees from coverage when they are acting outside the scope of employment *nor limits* coverage to only when Coe employees are acting within the scope of their employment, the court must presume that the parties did not intend to so exclude or limit coverage for Coe employees. In this regard, plaintiff notes that there is no mention in the Exclusions section of the policy of employees who are acting outside the scope of their employment.[3]

{¶ 22} Fourth, plaintiff argues that the language of Section II, 1., d. (covering "an organization other than a partnership, joint venture, or limited liability company) does not limit Coe's coverage to when they are conducting business. Plaintiff observes that each of the immediately preceding subsections (Section II., 1., a.-c.) expressly limits coverage of named individuals, partnerships, joint ventures, or limited liability companies to when they are conducting business.[4]

---

3. The only reference to scope of employment that appears in the exclusions section of the policy is found in Section I, B., 7., which excludes the claims of employees while acting *within* the scope of employment under certain circumstances.

4. {¶ a} Plaintiff acknowledges that in Section II, 1., a.-c., the language, *"but only with respect to the conduct of a business of which you are the sole owner," "but only with respect to the conduct of your business," and "but only with respect to their duties as your managers"* restricts the definitions of the listed types of insured individuals and insured business entities. If such restrictions were again expressed in the policy's section on exclusions, it would be redundant.

{¶ b} Similarly, this court views the limiting language in Section II, 2., a. (*"employees * * * while acting within the scope of their duties as such"*) as a valid restriction on the definition of the employees who qualify as insureds. It would be nonsensical and unnecessary for the policy to attempt to exclude from coverage those who were never included as insureds in the first place.

Plaintiff then concludes that since Coe's coverage is not limited to when it is conducting business, it must cover Coe's employees while outside the scope of employment.

## REPLY BRIEF OF DEFENDANT CINCINNATI

{¶ 23} On June 15, 2001, defendant Cincinnati filed its reply brief and made the following arguments:

{¶ 24} The policy provisions that specifically define the term "insured" to include employees while acting within the scope of their duties cannot be disregarded. According to defendant, the *Scott–Pontzer* decision stated clearly that "an insurance carrier can include terms and conditions which limit uninsured motorists coverage to employees only while acting within the course and scope of employment." Defendant argues that the policy language listing insureds includes "employees acting within the course and scope of their duties." Defendant argues that this is the very language that was authorized by the Ohio Supreme Court in *Scott–Pontzer*. In support of this argument, defendant refers to the decision of the Medina County Court of Common Pleas in *Cincinnati Ins. Co. v. Yost* (2001), No. 00CIV 0513, in which Judge Collier ruled that the language of the Cincinnati policy that limits UM/UIM coverage to an employee acting in the course and scope of his employment may not be ignored, but instead must be applied to give effect to the parties' intent to limit coverage to work-related accidents.

{¶ 25} The recent federal case of *Estate of Myers v. CNA Fin. Corp.*[5] rejected the plaintiff's *Scott–Pontzer* argument and held that the insurance policy at issue had specifically limited the scope of coverage to cover employees only while they are acting within the course and scope of employment. The court reasoned that since the accident occurred outside the scope of employment, the plaintiff did not qualify as an "insured" for the purposes of UIM coverage. The federal court noted that the *Scott–Pontzer* decision did not begin with an analysis of exclusions and limitations. The analysis began instead with an examination of the policy language to see whether the plaintiff was an insured. The federal court then concluded that the scope-of-employment policy language defined "insured" in such a way that the plaintiff was not included in that definition. Defendant argues that the identical circumstances exist in this case, and that,

---

{¶ c} Therefore, where *"employees acting outside the scope of their duties"* are not included as defined insureds, the absence of any exclusion of *"employees while acting outside the scope of their duties"* is of no importance whatsoever.

5. *Estate of Myers v. CNA Fin. Corp.* (N.D.Ohio 2001), No. 5:00–CV–1759.

therefore, Eugene Miller was not an "insured" under the definitions set forth in the policy.

{¶ 26} In support of these arguments,[6] defendant attached the following documents:

{¶ 27} Findings and Order Granting Summary Judgment in *Cincinnati Ins. Co. v. Yost* (Jan. 16, 2001), Medina C.P. No. 00CIV0513, attached to the reply brief as defendant's exhibit A;

{¶ 28} A copy of an order of Judge James S. Gwin in *Estate of Myers v. CNA Fin. Corp.* (Jan. 23, 2001), No. 5:00–CV–1759, attached to the reply brief as defendant's exhibit B.

## PLAINTIFF'S BRIEF IN REPLY

{¶ 29} On June 18, 2001, plaintiff filed his brief in reply, arguing that:

{¶ 30} Section II., 2., a. (employees acting within the scope of their duties as such) neither excludes plaintiff from coverage while acting outside the scope of his employment nor limits coverage for him to when he is acting within the scope of his employment. Plaintiff strenuously observes that the scope-of-employment policy language does not say that employees of Coe Manufacturing are covered *only* when acting within the scope of their duties as such. Plaintiff also observes that this policy language does *not* state that Coe employees are not covered when acting outside the scope of their duties as such. Plaintiff argues that the scope-of-employment policy language is not a clear and exact exclusion, and, therefore, it fails to exclude plaintiff from coverage.

{¶ 31} Section II., 2., a. (employees acting within the scope of their duties as such) does not limit the coverage afforded by Section II, 1., d. (an organization other than a partnership, etc.), but rather expands it. Here, plaintiff makes the standard *Scott–Pontzer* argument. He argues that the language of Section II, 1., d. applies to Coe as a corporation. Since Coe cannot occupy an automobile or incur bodily injury, naming Coe as the insured is meaningless unless UIM coverage extends to some person or persons, including Coe's employees. Plaintiff asks rhetorically, "[I]f the only coverage Coe employees received was under Section II, 2., a., then what purpose would Section II, 1., d. serve? Plaintiff then argues that Coe's employees are covered under *both* Section II, 1., d., *and* Section II, 2., a. Plaintiff suggests that Coe employees are covered by Section II, 2., a.,

---

**6.** Defendant also argues again that if the motion for summary judgment by defendant, The Hartford, is granted, there would be no excess coverage under the Cincinnati policy. As noted above, Hartford's motion for summary judgment was denied, so this argument is moot.

when acting *within* the scope of their duties, and they are covered by Section II, 1., d., when acting *outside* the scope of their duties.

{¶ 32} If Section I, B., 7. ("employer's liability limitation"—excluding bodily injury to an employee of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business) and/or Endorsement U.S. 4002 10 97 (amending the "employer's liability limitation" to add the words, "unless otherwise excluded by this policy"), and Section II, 2., a. ("insured" includes employees acting within the scope of their duties as such), read together, provide no underinsured motorist coverage for Coe employees, then plaintiff is entitled to underinsured motorist coverage under R.C. 3937.18(A)(2) by operation of law. Plaintiff argues here that if coverage for Coe employees acting *within* the scope of their duties is taken away by the "employer liability limitation" in Section 1, B., 7. and/or Endorsement 4002 10 97, and if Section II, 2., a. excludes coverage for employees while acting *outside* the scope of their duties, then Coe employees are entitled to no coverage at all under Cincinnati's policy. Plaintiff argues that such a complete denial of coverage of employees violates R.C. 3937.18(A)(2) and mandates coverage of plaintiff by operation of law.[7]

---

7. {¶ a} At first blush, this argument appears to have some merit because it appeals to the same policy concerns that undergirded the decision in *Scott–Pontzer*. If a policy names a corporation as a named insured, R.C. 3937.18 requires the policy to extend UM/UIM coverage to at least some individuals associated with that corporation because corporations themselves cannot incur bodily injuries. However, in this case, plaintiff's argument fails for at least four distinct reasons.

{¶ b} First, the only way that plaintiff, Eugene Miller, could be excluded from the Cincinnati policy by operation of the provisions in Section I, B., 7. (employer's liability limitation), or the corresponding endorsement, is if plaintiff first falls within the policy's definition of "insured." Manifestly, plaintiff cannot be *excluded* from coverage until he has first been *included*. Here, plaintiff was not an employee acting within the scope of his duties as such. Therefore, he was not included as an "insured" under the policy definition. Accordingly, as applied to the plaintiff in this case, any analysis of the exclusions in the employer's liability limitation is premature and therefore inapplicable.

{¶ c} Second, the Cincinnati policy specifically includes additional individuals—other than employees—in the definition of "insured." The policy lists executive officers, directors, and stockholders as individuals who are insureds "while acting within the scope of their duties as such." Hence, even if plaintiff's analysis is correct—and the combination of the various policy provisions acts to exclude *employees* from coverage regardless of whether they are acting within or outside of their duties—the policy does not, on that basis alone, run afoul of R.C. 3937.18 because there are other individuals associated with Coe Manufacturing who would still be covered by the UM/UIM provisions.

{¶ d} Third, the exclusion in Section I, B., 7. operates—when it applies—to exclude employees who suffer bodily injury or personal injury "arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business[.]" However, the language of the exclusion also states that it does not apply when insurance for bodily injury or personal injury "is provided by a valid and collectible policy listed in the Schedule of Underlying Policies[.]" In the present case, such insurance has been provided by the policy issued by The Hartford, which was listed on Schedule A—Schedule of

{¶ 33} Section I, B., 7. ("employer liability limitation"), and/or Endorsement 4002 10 97 (amending the "employer liability limitation") contradicts the language contained in Section II, 2., a. ("insured" includes employees acting within the scope of their duties as such), and results in a complete denial of coverage for Coe employees in violation of R.C. 3937.18(A)(2). Therefore, the policy is ambiguous and the resulting ambiguity must be construed liberally in favor of plaintiff.[8]

{¶ 34} Plaintiff also argues that the case law cited by defendant is distinguishable. The *Yost* case is distinguishable because the present policy does not specifically limit coverage to employees acting within the scope of their duties. The *Estate of Myers* case is distinguishable because the present policy does not clearly and exactly state that an employee is an insured only when using an auto in the scope of employment.

### SUMMARY JUDGMENT

{¶ 35} Civ.R. 56(C) states:

{¶ 36} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipula-

---

Underlying Policies. Accordingly, by its own terms, the exclusion does not apply to the facts of this case.

{¶ e} Fourth, even if the combination of these policy provisions operates—as plaintiff suggests—to exclude all employees from coverage, the *Scott–Pontzer* decision does not control because the insurance policy in *Scott–Pontzer* contained provisions that were substantially different from the provisions in the Cincinnati policy. As noted below, the decision and the rationale in *Scott–Pontzer* were expressly based on the fact that the only named insured listed in the policy was a corporation. This fact may have been foundational to the *Scott–Pontzer* opinion. The present case involves a fact pattern that is categorically different from that of *Scott–Pontzer*, in that the Cincinnati policy specifically listed employees and other individuals "while acting in the scope of their duties as such" among the defined insureds. Some day, the Ohio Supreme Court may decide that the provisions in the Cincinnati policy violate R.C. 3937.18. However, until the Supreme Court makes that decision, it is not the province of this court—as a trial court—to make policy-based innovations in Ohio law. *Zivich v. Mentor Soccer Club, Inc.* (Apr. 12, 1997), 11th Dist. No. 95–L–184, 1997 WL 203646, affirmed by *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201.

**8.** As explained elsewhere in this opinion, the exclusion described in Section 1, B., 7. does not apply in the present case. Therefore, there is no conflict between the exclusion and the definition of employees as insureds. However, even if there were such a conflict resulting in the total exclusion of employees, the policy still lists other individuals (directors, officers, and stockholders) in its comprehensive scheme of defined insureds. Therefore, *Scott–Pontzer* would still not apply.

tion, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 37} Thus, before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.[9]

{¶ 38} The main purpose of the summary judgment procedure is to enable a party to go behind the allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial. The remedy should be applied sparingly and only in those cases where the justice of its application is unusually clear. Resolving issues of credibility or reconciling ambiguities and conflicts in witness testimony is outside the province of a summary judgment.[10] In reviewing a motion for summary judgment, the court must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion.[11]

{¶ 39} Under Ohio law, for purposes of ruling on a motion for summary judgment, a dispute of fact is "material" if it affects the outcome of the litigation. The dispute is "genuine" if it is manifested by substantial evidence going beyond the mere allegations of the complaint.[12]

## DISCUSSION

{¶ 40} It is the opinion of this court that the decision in *Scott–Pontzer* does not apply to the facts of this case. *Scott–Pontzer* is distinguishable.[13] However, the court's inquiry does not end with that determination.

---

9. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 667 N.E.2d 1197.

10. *Napier v. Brown* (Montgomery 1985), 24 Ohio App.3d 12, 24 OBR 33, 492 N.E.2d 847.

11. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

12. *Mount v. Columbus & S. Elec. Co.* (1987), 39 Ohio App.3d 1, 528 N.E.2d 1262.

13. As noted above, the decision and the rationale in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, were expressly based on the fact that the only named insured listed in the policy was a corporation. This fact may have been foundational

{¶ 41} An insurance policy is a contract, and the relationship between the insured and the insurer is purely contractual in nature.[14] As in all cases in which insurance coverage is provided by an insurance policy, the issue in this case will be determined by a reasonable construction of the contract in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed.[15] If a contract is clear and unambiguous, its interpretation is a matter of law to be decided by the court (possibly through summary judgment), and there is no issue of fact to be determined.[16] Common words appearing in the policy will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the policy.[17] However, in drafting contracts of insurance, insurers must do so with language that is clear and unambiguous and that comports with the requirements of the law,[18] and where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.[19] In this regard, a policy is only ambiguous if its terms are subject to more than one reasonable interpretation.[20] In the present case, the terms of the

---

to the *Scott–Pontzer* opinion. The present case involves a fact pattern that is categorically different from that of *Scott–Pontzer*, in that the Cincinnati policy specifically listed employees and other individuals "while acting in the scope of their duties as such" among the defined insureds.

**14.** *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 472 N.E.2d 1061, 1062.

**15.** *Dealers Dairy Products Co. v. Royal Ins. Co.* (1960), 170 Ohio St. 336, 164 N.E.2d 745; *Bobier v. Natl. Cas. Co.* (1944), 143 Ohio St. 215, 28 O.O. 138, 54 N.E.2d 798; *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380; *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347.

**16.** *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684; *Leber v. Smith* (1994), 70 Ohio St.3d 548, 553, 639 N.E.2d 1159.

**17.** *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146; *Olmstead v. Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 259 N.E.2d 123; *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 122, 647 N.E.2d 1358.

**18.** *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380; *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438.

**19.** *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949; *Thompson v. Preferred Risk Mut. Ins. Co.* (1987), 32 Ohio St.3d 340, 342, 513 N.E.2d 733, 736; *Blue Cross & Blue Shield Mut. of Ohio v. Hrenko* (1995), 72 Ohio St.3d 120, 122, 647 N.E.2d 1358.

**20.** *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119–120, 661 N.E.2d 1005.

Cincinnati insurance contract are not subject to more than one *reasonable* interpretation.

{¶ 42} Essentially, plaintiff argues that this court should begin its analysis with a "safari" through the language of the policy to see whether the word "you" is used to make plaintiff's corporate employer a named insured. Once the "quarry" has been spotted, plaintiff would have this court focus its sights exclusively on the question of whether the *Scott–Pontzer* holding applies to the employees of the corporate insured. If *Scott–Pontzer* applies, then plaintiff would have this court again sift the language of the policy for specific exclusions and/or limitations that clearly deny or restrict coverage of corporate employees. In the absence of such clear exclusions or limitations, plaintiff then urges this court to find that uninsured motorist coverage applies to plaintiff without restriction.

{¶ 43} However, the law in Ohio requires a different approach in which the entire insurance contract is *first* reasonably construed in conformity with the intention of the parties. While it is true that ambiguities are to be read strictly against the insurer and liberally in favor of the insured, such is not true of the entire insurance contract. If the entire contract can be *reasonably* construed to make sense, then the hunt for ambiguities never begins, and the *Scott–Pontzer* analysis is inapplicable.

{¶ 44} In the present case, the entire Cincinnati contract presents a detailed coverage plan that lists the various types of covered persons by category. Every conceivable category of legal person is separately accounted for, including employees of the corporate insured while acting within the scope of their duties. When presented with such a comprehensive coverage plan that specifically lists corporate employees as covered persons while acting *within* the scope of their duties, it would be unreasonable for this court to construe the contract as covering corporate employees while acting *outside* the scope of their duties.

### THE POLICY LANGUAGE

{¶ 45} The Cincinnati insurance policy is structured in five sections. Section I defines "Coverages." Section II defines "Who is an insured." Section III defines "Limits of insurance." Section IV defines "Conditions." And Section V sets forth various special "Definitions." In addition, the policy contains various endorsements.

{¶ 46} The general rule of coverage provided by the policy is stated in Section I as follows:

{¶ 47} "A. Insuring Agreement

{¶ 48} "We will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages in excess of the 'underlying insurance' or for an 'occurrence' covered by this policy which is either excluded or not covered by 'underlying insurance' because of:

{¶ 49} " '1. Bodily injury' or 'property damage' covered by this policy occurring during the policy period and caused by an 'occurrence'; or

{¶ 50} " '2. Personal injury' or 'advertising injury' covered by this policy committed during the policy period and caused by an 'occurrence'.

{¶ 51} "* * *

{¶ 52} "No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Defense and Supplementary Payments."

{¶ 53} The first question for this court to address is whether the plaintiff is an insured under the terms of the policy. The Declarations page lists the following as the named insured under the policy:

{¶ 54} "COE MANUFACTURING COMPANY, MICHAEL COLEMAN, CONTROLLER, WASHINGTON IRON WORKS, A DIVISION OF COE MANUFACTURING 609 BANK STREET, PAINESVILLE, OH 44077"

{¶ 55} Hence, the named insured designated in the Declarations is "Coe Manufacturing Company," which was plaintiff's employer. Additional insureds are defined in Section II of the policy.

{¶ 56} Under "Section II—Who is an Insured," the policy states:

{¶ 57} "1. If you are designated in the Declarations as:

{¶ 58} "a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.[21]

{¶ 59} "b. A partnership or joint venture, you are an insured. Your members, partners and their spouses are also insureds, but only with respect to the conduct of your business.[22]

{¶ 60} "c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.

---

21. Since Coe Manufacturing Company is not an individual, this item does not apply in the present case.

22. Since Coe Manufacturing Company is not a partnership or joint venture, this item does not apply in the present case.

Your managers are insureds, but only with respect to their duties as managers.[23]

{¶ 61} "d. An organization other than a partnership, joint venture, or limited liability company, you are an insured.[24] Each of the following is also an insured:

{¶ 62} "(1) Any subsidiary company of such organization, including any subsidiary company thereof:

{¶ 63} "(a) Existing at the effective date of this policy; or

{¶ 64} "(b) Acquired during the policy period.

{¶ 65} "(2) Any other company controlled and actively managed by such organization or any such subsidiary:

{¶ 66} "(a) At the effective date of this policy; or

{¶ 67} "(b) If the control and active management thereof was acquired during the policy period." (Footnotes added.)

{¶ 68} The next subsection states, in pertinent part, as follows:

{¶ 69} "2. Each of the following is also an insured:

{¶ 70} "a. Any 'executive officer', director, 'employee'[25] or stockholder of yours while acting within the scope of their duties as such." (Footnote added.)

{¶ 71} Thus, in addition to designating Coe Manufacturing Company as the "Named Insured" in the Declarations, the policy terms define insureds to include: Any "executive officer" of Coe's while acting within the scope of their duties as such; any "director" of Coe's while acting within the scope of their duties as such; any "employee" of Coe's while acting *within* the scope of their duties as such; or any "stockholder" of Coe's while acting within the scope of their duties as such.

---

**23.** Since Coe Manufacturing Company is not a limited liability company, this item does not apply in the present case.

**24.** Since Coe Manufacturing Company is a corporation, this item applies. By its terms, this item also includes as defined insureds any of Coe Manufacturing Company's subsidiaries and any other companies "controlled and actively managed by" Coe Manufacturing Company or by Coe's subsidiaries.

**25.** {¶ a} The term "employee" is in quotation marks because it is a special term defined in Section V as follows:

{¶ b} 4. " 'Employee' includes a 'leased worker'. 'Employee' does not include a 'temporary worker'."

{¶ 72} Plainly, by its terms, the Cincinnati policy does not include as defined insureds any employees of Coe Manufacturing Company while acting *outside* the scope of their duties as such.

{¶ 73} The second question for this court to address is whether, in listing the corporate entity of Coe Manufacturing Company as a named insured, the policy as a whole operates in such a way that it violates the UIM requirements of R.C. 3937.18. It does not. The policy specifically includes Coe's employees,[26] directors, officers, and stockholders[27] as individual insureds when acting within the scope of their duties as such. Each of these individuals is afforded UIM coverage under the policy. The mere fact that an insurance policy lists a corporation as a named insured does not compel this court to ignore the clear intent of the parties as expressed through the insurance contract as a whole.

{¶ 74} Accordingly, there are no ambiguities in the Cincinnati policy language. This lack of ambiguity distinguishes the language in the Cincinnati policy from The Hartford's policy language and the policy language in *Scott–Pontzer*.

## CONCLUSION

{¶ 75} Therefore, with respect to the issue of whether plaintiff was an insured under the Cincinnati policy for purposes of underinsured motorist coverage, the court finds that there are no genuine issues of material fact, defendant Cincinnati is entitled to judgment as a matter of law, and—construing the evidence most strongly in favor of plaintiff—it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to plaintiff. Therefore, defendant's motion for summary judgment is hereby granted. Accordingly, plaintiff Eugene Miller was not, at the time of the motor vehicle accident on December 2, 1998, an insured under the policy issued by defendant

---

26. {¶ a} As noted above, the exclusion in Section I, B:, 7. does not apply in this case. The exclusion in Section I, B., 7. operates—when it applies—to exclude from coverage employees who suffer bodily injury or personal injury "arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business[.]" However, the language of the exclusion itself states that it does not apply when insurance for bodily injury or personal injury "is provided by a valid and collectible policy listed in the Schedule of Underlying Policies[.]" In the present case, such insurance has been provided by the policy issued by The Hartford, which was listed on Schedule A—Schedule of Underlying Policies. Accordingly, by its own terms, the exclusion does not apply to the facts of this case.

{¶ b} Therefore, the Cincinnati policy not only includes employees acting within the scope of their duties as defined insureds (Section II, 2., a.), but it also extends UM/UIM coverage to such individual employees while they are acting within the scope of their duties.

27. Although it is possible that some or all of Coe's stockholders may be non-individual legal entities, there is no evidence currently before the court to suggest that this is currently the case.

Cincinnati to the Coe Manufacturing Company. Also, for the foregoing reasons, plaintiff's cross-motion for partial summary judgment is hereby denied.

{¶ 76} IT IS SO ORDERED.

Judgment accordingly.