OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

Leber et al., Appellants, v. Smith et al., Appellees.
[Cite as Leber v. Smith (1994),     Ohio St. 3d     .]
Civil procedure -- Civ.R. 51 -- Contesting improper jury
     instructions -- Interpretation of insurance contract
     involves a question of law to be decided by a judge --
     Jury permitted to determine factual issues.
     (No. 93-646 -- Submitted May 16, 1994 -- Decided October
19, 1994.)
     Appeal from the Court of Appeals for Erie County, No.
E-87-43.
     This case involves two lawsuits.  The first ("Leber I")
was a personal injury suit brought against various officials of
Erie County.  The second ("Leber II") was a suit brought
against insurance companies alleging, among other things, that
the insurers had acted in bad faith when they defended the
county officials in Leber I.
     On April 7, 1979, plaintiff-appellant Eugene A. Leber was
accidentally shot by Erie County Deputy Sheriff Steven A.
Smith, defendant-appellee.  The shooting occurred when Smith
stopped a car driven by Leber.  As he approached Leber's car
with his firearm drawn, Deputy Smith slipped on a patch of
ice.  Smith accidentally discharged his weapon. Leber was
struck by the shot and rendered a paraplegic.
     In 1981, Leber and his parents, plaintiffs-appellants
Richard P. and June M. Leber, filed suit in the United States
District Court for the Northern District of Ohio, claiming a
civil rights violation.  The federal trial court granted
summary judgment for the defendants, which was affirmed on
appeal.  Leber v. Smith (C.A.6, 1985), 773 F.2d 101.
     Leber I, the personal injury action, was filed in the Erie
County Court of Common Pleas in June 1983.  Leber and his
parents were plaintiffs in this action, while appellees Smith,
the Sheriff of Erie County, the Board of Commissioners of Erie
County ("the board") and its individual members were defendants.
     At the time of the accident, the Sheriff's Department was
insured by American Home Assurance Company ("American Home").
American Home assigned the law firm of Eastman & Smith to
defend its insured.

At the time of the accident, the board was insured by Buckeye Union Insurance Company ("Buckeye Union"). Buckeye Union assigned attorney Raymond N. Watts, defendant-appellee, to defend its insured.

In an entry, the trial court in Leber I held that the board was liable under the doctrine of respondeat superior for any negligence of the Erie County Sheriff or his deputies that proximately caused injury to the Lebers.

Settlement negotiations began. The Lebers demanded $2,300,000 in full and final settlement of their claims against the county officials. The Lebers calculated this amount by adding $2 million of coverage allegedly available to the board under the Buckeye Union policy to the $300,000 of coverage allegedly available under the American Home policy. The board's position was that settlement of the case could not be discussed until Buckeye Union offered to participate and contribute to that amount. Buckeye Union, however, contended that there was no coverage in its policy for the Sheriff of Erie County or deputy sheriff and, therefore, made no settlement offer. An internal office memorandum, however, indicated that Buckeye Union analysts believed that Buckeye Union was liable under the terms of its policy.

Ultimately, Leber I was tried before a jury. The jury found thirty-five percent of the total negligence to be attributable to Smith, sixty-five percent of the negligence to be attributable to the Erie County Sheriff and no negligence to be attributable to Eugene Leber.

Upon reviewing the jury's verdict in favor of the Lebers, the trial court ordered that "judgment is rendered in favor of plaintiffs and against defendants; that defendant Steven A. Smith shall pay plaintiff Eugene A. Leber the sum of three million five hundred four thousand dollars ($3,504,000.00); that defendant Erie County Sheriff (i.e., the Erie County Sheriff's Department) shall pay to Eugene A. Leber the sum of six million four hundred ninety-six thousand dollars ($6,496,000.00); that defendant Steven A. Smith shall pay to Richard Leber and June Leber the sum of fifty-two thousand five hundred dollars ($52,500.00); and that defendant Erie County Sheriff * * * shall pay to Richard Leber and June Leber the sum of ninety-seven thousand five hundred dollars ($97,500.00).

"It is further the ORDER, JUDGMENT, and DECREE of this Court, in accordance with the approved judgment entry filed July 27, 1984, that Erie County, Ohio, by and through defendant Board of Erie County Commissioners, is liable for the entire judgment in the sum of ten million one hundred fifty thousand dollars ($10,150,000.00), plus all interest which may accrue thereon.

"* * * [I]nterest shall accrue at the rate of ten (10%) percent per annum from the date of the filing of this entry and * * * defendants shall pay all court costs incurred herein." (Footnote omitted.)

Before Leber I was reviewed on appeal, the Lebers settled their case with all three of the original defendants -- Deputy Smith, the Sheriff of Erie County and the board. Pursuant to the agreement, the board agreed to pay the Lebers $2 million over a five-year period. The board, Deputy Smith and the Sheriff assigned all of their rights against their insurance

carriers and attorneys to the Lebers.  The agreement required the Lebers to repay the board in the event they recovered money from the insurance carriers.  All appeals of Leber I were then dismissed.

Following this settlement, the Lebers filed a complaint against American Home  and the law firm of Eastman & Smith. The Lebers also intervened in the board's declaratory judgment action against Buckeye Union and were joined as party-plaintiffs.  A motion to consolidate all three of these actions was granted on January 23, 1987.  The Lebers became the principal plaintiffs in the consolidated action, and the defendants were Buckeye Union, American Home, Eastman & Smith and Raymond Watts.

With the claims of the board having been assigned to the Lebers in the settlement agreement, the Lebers now claimed that Buckeye Union had in bad faith failed to settle Leber I on behalf of its insured, the board, within the policy limits. Similar claims were made against American Home.  The Lebers alleged that Eastman & Smith had committed legal malpractice, causing damage to the board.  The Lebers also claimed that Raymond Watts breached the fiduciary duty owed to his client, the board.

Leber II proceeded to trial.  During the trial, the Lebers agreed to dismiss their actions against American Home for $2 million.

On August 10, 1987, Judge McMonagle filed a judgment entry deciding the declaratory judgment action.  The trial court found that "[f]or purposes of the insurance policy issued by the Buckeye Union Insurance Company * * *, the terms Board of Erie County Commissioners and Erie County are synonymous. Steven A. Smith is an employee of Erie County and the Board of Erie County Commissioners.  Both Steven A. Smith and the Erie County Sheriff are insureds under the policy of insurance issued by the Buckeye Union Insurance Company."  The trial court then declared that $2 million in coverage was available to the board.

The jury then returned a verdict in favor of the Lebers on their bad faith claim against Buckeye Union but also returned a verdict in favor of Watts and Eastman & Smith.  The jury unanimously found that Buckeye Union's conduct "imported a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud or embracing actual intent to mislead or deceive another."  Six of the eight jurors found that Buckeye Union's "conduct in failing to settle the [Lebers'] claims was motivated by actual malice."  As a result of the verdict, the trial court entered a judgment for $13,336,232.80 in favor of the Lebers and against Buckeye Union. The amount of this judgment was calculated by adding the $10,150,000 judgment from Leber I to $3,064,465.74 in interest accumulating from the date that Leber I was decided and $2,121,767.06 in prejudgment interest accruing from July 5, 1982, to August 7, 1984.  The trial court then subtracted from the judgment the $2 million settlement paid to the Lebers by American Home.

The Court of Appeals for Erie County reversed the judgment of the the trial court.  The appellate court found that Deputy

Smith and the Erie County Sheriff's Department were not insureds under the Buckeye Union policy. The appellate court then upheld the trial court's judgment in favor of Watts and Eastman & Smith and against the Lebers.

The Supreme Court of Ohio remanded the cause to the Court of Appeals for Erie County to determine the merits of five assignments of error that the appellate court had determined to be moot and, thus, declined to decide. See 46 Ohio St.3d 702, 545 N.E.2d 1277.

Upon remand, the court of appeals again reversed the trial court's judgment in favor of the Lebers and against Buckeye Union.

This cause is now before this court pursuant to the allowance of a motion to certify the record.

Murray & Murray Co., L.P.A., Dennis E. Murray, Kirk J. Delli Bovi and W. Patrick Murray, for appellants.

Fritz Byers, for appellee, Buckeye Union Insurance Company.

Kitchen, Deery & Barnhouse, Charles W. Kitchen and Eugene B. Meador, for appellee, Raymond N. Watts.

Peck, Shaffer & Williams and Thomas A. Luebbers, urging reversal for amicus curiae, County Commissioners' Assocation of Ohio.

Pfeifer, J.    For the reasons that follow, we reverse the judgment of the court of appeals in part, affirm it in part, and reinstate all of the judgments rendered by the trial court.

## I
### The Claims against Buckeye Union
#### A

The appellate court reversed the trial court's judgment, in part, because it held that the trial judge improperly instructed the jury that the $10,150,000 judgment in Leber I and the Leber I trial court's finding of respondeat superior between the board and employees of the Sheriff's Department were binding on the parties in Leber II. The Lebers contest this reversal.

The law regarding contesting improper jury instructions on appeal is clearly articulated in Civ. R. 51(A), which provides:

"[A] party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. * * *"

In the present case, Buckeye Union did not object to the trial judge's informing the jury that the judgment against the board in Leber I was binding on the jury in Leber II. Instead, Buckeye Union objected to another portion of the same jury instruction that informed the jury of the trial court's findings in the declaratory judgment action. Because Buckeye Union's reason for objecting to the jury instruction is not the same as its reason for objecting at trial, Buckeye Union was precluded from arguing on appeal that this instruction was improper. See Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, paragraph one of the syllabus. Thus, the appellate court's reversal on this ground was improper.

B

The court of appeals determined that the Buckeye Union insurance policy did not cover Deputy Smith's negligence nor did it cover the negligent training of Smith conducted by the Sheriff's Department. The appellate court strictly interpreted the insurance contract and found that only the board was covered by the policy. We disagree.

Endorsement No. CBP 677G of the Buckeye Union policy stated in relevant part:

"It is agreed that the 'Persons Insured' provision of Part VI [the general liability section] is amended to include any employee of the named insured while acting within the scope of his duties as such * * *."

The policy expressly based its rates on four hundred twenty-one employees of the board. Testimony at trial revealed that employees of the Sheriff's Department were included in these four hundred twenty-one employees insured by the policy.

The trial court correctly concluded that the Buckeye Union policy provided coverage for the negligent conduct of Deputy Smith and the negligent training of Smith conducted by members of the Sheriff's Department.

Thus, the court of appeals' reversal on these grounds was improper.

C

On remand, the court of appeals determined that Buckeye Union was entitled to have the jury interpret the insurance contract. We disagree.

The interpretation of an insurance contract involves a question of law to be decided by a judge. In Erie Ins. Group v. Fisher (1984), 15 Ohio St. 3d 380, 15 OBR 497, 474 N.E.2d 320, a unanimous court held:

"A declaratory judgment action filed by an insurer against an insured, the purpose of which is to construe an insurance policy and determine the insurer's obligations to the insured, and is not for the purpose of determining liability in an action for the recovery of money, is properly triable to the court." Id. at syllabus.

In the present case, the trial judge interpreted the insurance contract but allowed the jury to determine factual issues such as the presence of malice and fraud or deceit. The judge perfectly divided the responsibilities between himself and the jury.

Thus, the court of appeals' reversal on these grounds was improper.

II
The Claims against Watts

The Lebers claim that they are entitled to reversal of the judgment in favor of Watts because the trial court failed to instruct the jury that the burden of proof was on Watts to prove that he did not breach the fiduciary duty owed to the board.

We disagree. The Lebers failed to object to Judge McMonagle's instructions to the jury regarding the appropriate burden of proof. Thus, pursuant to Civ. R. 51(A), they are precluded from objecting to the instructions at the appellate level.

Accordingly, we affirm the decision of the court of

appeals to the extent it upheld the judgment of the trial court in favor of Watts and against the Lebers.

                                    III

Because the court of appeals erred in the ways discussed in this opinion, we reverse the judgment of the court of appeals, in part, and reinstate all of the trial court's judgments.  The findings of the jury should not be disturbed.

                              Judgment affirmed in part
                              and reversed in part.

A.W. Sweeney, Douglas, Spellacy and F.E. Sweeney, JJ., concur.

Moyer, C.J., and Wright, J., dissent in part.

Leo M. Spellacy, J., of the Eighth Appellate District, sitting for Resnick, J.


Douglas, J., concurring.    I concur with the majority's analysis of this case but am puzzled by the contentions of the dissent.

The dissent takes issue with the majority's conclusion that the Buckeye Union insurance policy provided coverage for the negligence of Deputy Smith.  To support its objections to the majority opinion, the dissent contradicts itself.  It criticizes the majority for examining evidence extrinsic to the Buckeye Union policy to determine who the four hundred twenty-one employees are that the policy insures, yet the dissent, in an attempt to devine the intent of the parties to the insurance policy, travels far outside the four corners of the policy and examines and compares extrinsic matters arising out of a completely different policy issued by American Home.  The dissent compares the American Home policy's premiums and coverages to those in the Buckeye Union policy.

Worse yet, when the dissent examines this extrinsic evidence, it draws an improbable conclusion.  The dissent concludes that because the Sheriff's Department purchased its own $300,000 liability policy with American Home for a price significantly greater than the premium the board paid for its $1,000,000 liability policy with Buckeye Union, the board never intended its policy to insure the negligent acts of deputy sheriffs.  Insurance coverage must be governed by the terms of the policy and not by the policy's actuarial soundness.

Worst of all, the dissent's examination of extrinsic evidence is conveniently -- if not deceivingly -- selective.  When a thorough examination of the record is conducted, it is unquestionable that the Buckeye Union policy provided coverage for the negligence of Deputy Smith.  The board published bid specifications describing the policy that it required.  The Buckeye Union policy was issued to comply with those specifications.  In item No. 6 of the section "Underwriting Instructions" of the 1978 Insurance Specifications (General Liability), the specifications required insurance to cover "all sums which the Board of County Commissioners of Erie County, Ohio shall become obligated to pay as damages by reason of liability imposed by law."  The limit of liability for bodily injury was to be $1,000,000.  The specifications go on to say that "[t]he name of the insured shall be:  Board of County Commissioners of Erie County, Ohi, [sic] and Erie County officers and employees.  It is understood and agreed that the

inclusion of officer and employees as named insureds [is] ONLY AS RESPECT TO THEIR DUTIES."  (Emphasis added.)

Whether Deputy Smith was an employee of the County Commissioners or the Sheriff (or both) makes little difference.  He was to be covered by the policy according to the insurance specifications.  The use of the words "Erie County officers and employees" cannot just be ignored.  The reason is that the Sheriff is an Erie County "officer."

As far back as the year 1892, this court said in State ex rel. Attorney General v. Brennan (1892), 49 Ohio St. 33, 38-39, 29 N.E. 593, 594, that:

"It is not important to define with exactness all the characteristics of a public office, but it is safely within bounds to say that where, by virtue of law, a person is clothed, not as an incidental or transient authority, but for such time as denotes duration and continuance, with independent power to control the property of the public, or with public functions to be exercised in the supposed interest of the people, the service to be compensated by a stated yearly salary, and the occupant having a designation or title, the position so created is a public office.  And where such duties are wholly performed within the limits of a county, and for the people of that county, the salary to be paid by the disbursing officer of the county, from the funds of the county, the office is a county office, and, as one who is lawfully invested with an office is an officer, the person lawfully filling such place is necessarily a county officer.

"From these definitions and illustrations it is clear that the position created by the act in question is an office, and that the defendant, if selected in the manner prescribed by law, is an officer."  (Emphasis added.)

Further, "officer" is defined as a "[p]erson holding office of trust, command or authority in corporation, government * * * or other institution or organization." (Emphasis added.)  Black's Law Dictionary (6 Ed.1990) 1083. "Official" is defined as "An officer; a person invested with the authority of an office.  See also Officer."  (Emphasis added.)  Id. at 1084.  Black's defines "County officers" as "[t]hose whose general authority and jurisdiction are confined within the limits of the county in which they are appointed, who are appointed in and for a particular county, and whose duties apply only to that county, and through whom the county performs its usual political functions."  Id. at 351. "Appointment" is defined as "[t]he designation of a person, by the person or persons having authority therefor, to discharge the duties of some office or trust."  Id. at 99.

R.C. 325.02 provides that "[t]he salaries and compensation of county officers provided for by sections 325.03 to 325.09 of the Revised Code, shall be in lieu of all fees, costs * * * and all other perquisites, of whatever kind * * *."  (Emphasis added.)  One of the "county officers" provided for is the county sheriff.  R.C. 325.06.  See, also, R.C. 305.02, 305.03 and 305.19.

Any way one cuts it, the policy issued in response to the 1978 insurance specifications includes coverage for Deputy Smith.  The characterizations of the dissent are not well taken.

A.W. Sweeney and F.E. Sweeney, JJ., concur in the

foregoing concurring opinion.

Wright, J., dissenting in part. I respectfully dissent. I find the majority's brief and inaccurate treatment of the key issue in this complex case most disquieting. The facts surrounding this case make it crystal clear that the general liability section of the insurance policy issued by Buckeye Union to the Erie County Board of Commissioners ("the board") did not cover the Erie County Sheriff's Department or any of its deputy sheriffs. Thus, I would affirm the judgment of the court of appeals on the coverage issue.

The majority completely ignores the threshold question of the identity of the named insured. Without a proper analysis of this issue, the majority's subsequent conclusions not only are confusing, but fatally flawed.

In 1987, the trial court ruled that the liability policy covered all Erie County public employees, including the Sheriff's Department, even though the policy clearly named only the Erie County Board of Commissioners as the insured. The court of appeals reversed the trial court's judgment and correctly ruled that the policy covered, as stated, the Erie County Board of Commissioners and its (the board's) employees.

In reversing the court of appeals' judgment on the issue of coverage, the majority purports to "reinstate all of the trial court's judgments." But the majority does not find, as the trial court did, that the policy covered all Erie County employees. Rather, the majority apparently concludes that the Erie County Sheriff's Department should somehow be considered employees of the board for purposes of the general liability coverage under the policy. Thus, the majority appears to agree with the court of appeals that the policy was limited to covering the board and its employees.

If the foregoing conclusion is true, the question asks itself -- i.e., were employees of the Erie County Sheriff's Department also employees of the board? Because the majority did not specifically ask that question, it apparently did not feel compelled to fully answer it, thus oversimplifying its analysis in reaching the conclusion that the Buckeye Union policy provided general liability coverage for the Sheriff's Department. Instead, the majority makes an inexcusable stretch and extends general liability coverage intended exclusively for the board and its employees to the members of the Sheriff's Department, based loosely on a rating factor used in another, unrelated, part of the policy. The following analysis conclusively shows that the Buckeye Union insurance policy covered only the board and its employees, and that the members of the Erie County Sheriff's Department were neither employees of the board nor insureds under the general liability section of the Buckeye Union insurance policy.

Ohio law instructs that "[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 449, 474 N.E.2d 271, 272. Furthermore, this court consistently has held that courts have "an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties." Miller v. Marrocco (1986), 28 Ohio St.3d 438,

439, 28 OBR 489, 491, 504 N.E.2d 67, 69.  In other words, "[w]hen the language of an insurance policy has a plain and ordinary meaning, it is unnecessary and impermissible for this court to resort to construction of that language."  Karabin v. State Auto. Mut. Ins. Co. (1984), 10 Ohio St.3d 163, 166-167, 10 OBR 497, 499, 462 N.E.2d 403, 406.

Given the plain language of the insurance policy at issue here, there is no need to resort to extrinsic evidence (as the majority does) to determine the scope of the policy's coverage.  Moreover, even in its improper attempt to determine the scope of the policy's coverage by resorting to extrinsic evidence, the majority inaccurately construes the extrinsic evidence in this case.

Buckeye Union's policy clearly and plainly listed only the board as the "named insured."  Under the heading "Insured's Name and Mailing Address," the policy identified the insured as the "Commissioners of Erie County Sandusky, Ohio."  Part V of the policy, the Business Auto Liability Insurance portion, listed the "Named Insured's Business" as the "Board of County Commissioners."  Part VI of the policy, the Comprehensive General Liability Insurance portion, also listed the named insured as the "Board of County Commissioners."

There also is no question that, in addition to covering the board itself, the policy also covered the employees of the board.  As noted by the majority, endorsement No. CBP 677G modified the policy's coverage under Part VI to include "any employee of the named insured while acting within the scope of his duties as such ***."  The question, therefore, insofar as coverage is concerned, is whether Deputy Smith was an employee of the Board of County Commissioners.  The answer to this question, of course, is in the negative.

The policy issued by Buckeye Union did not define the term "employee."  Decisions of this court, however, hold that an employee-employer relationship exists "only when one party exercises the right of control over the actions of another and those actions are directed toward the attainment of an objective which the former seeks.  For the relationship to exist, it is unnecessary that such right of control be exercised; it is sufficient that the right merely exists." (Citations omitted.)  Baird v. Sickler (1982), 69 Ohio St.2d 652, 654, 23 O.O.3d 532, 533, 433 N.E.2d 593, 595.

The record contains NO evidence that the board had the right to control the Sheriff's Department or any of its deputies.  In fact, the majority does not even mention this issue.  Common sense militates against control of the sheriff's deputies by the board.  Moreover, Ohio law does not confer upon the board such a right of control.  R.C. 305.01 provides that "[t]he board of county commissioners shall consist of three persons," all of whom are elected officials.  Under R.C. 311.01(A), each county also elects a sheriff, and R.C. 311.04 authorizes the sheriff alone (not the board of commissioners) to appoint deputies.  Because only the sheriff has the power to appoint deputies, only the sheriff has the right to control their actions.  Therefore, Deputy Smith was an employee of the Erie County Sheriff's Department and not of the board.

Nevertheless, regardless of the foregoing analysis, which the majority fails to undertake, the majority finds that the

general liability section of the Buckeye Union policy covered the Sheriff's Department. Unfortunately, in its hasty attempt to determine whether "any employee of the named insured" includes employees of the Sheriff's Department, the majority misconstrues the evidence in this case. The majority concludes that Smith and the Sheriff's Department are employees of the board by relying on only two facts: (1) "[t]he policy expressly based its rates on four hundred twenty-one employees of the board," which allegedly includes the employees of the Sheriff's Department, and (2) "Buckeye Union analysts believed that Buckeye Union was liable under the terms of its policy." However, these statements are simply not accurate.1 A close review of the entire record reveals that employees of the Sheriff's Department clearly were not covered under the section of the Buckeye Union policy at issue in this case.

A brief explanation of the board's insurance policies, which the majority opinion ignores, is necessary to fully understand the scope of the general liability coverage under the Buckeye Union policy. When the Leber incident occurred, an American Home Assurance Company policy covered personal injury liability incurred by the Sheriff's Department. The insurance policy between the Board of Commissioners and Buckeye Union was a comprehensive business policy, containing six mutually exclusive coverages. Two of these mutually exclusive coverages were Part V, Comprehensive Automobile Liability coverage, and Part VI, Comprehensive General Liability ("CGL") coverage, which covered bodily injury and property damage. The two policies were not duplicative. The Buckeye Union policy was the only policy that covered county automobile liability. The American Home policy was the only policy that covered personal injury liability incurred by the Sheriff's Department.

The CGL coverage under Part VI of the Buckeye Union policy is the only coverage that is at issue in this case. The definition of "Persons Insured" relied upon by the majority opinion is found in Part VI of the policy.

The majority opinion states, "The policy expressly based its rates on four hundred twenty-one employees of the board." This statement is misleading at best. Buckeye Union based its premiums on four hundred twenty-one employees only for purposes of automobile coverage, which appears in Part V, not Part VI of the policy. Buckeye Union needed to base its premiums for the automobile coverage on four hundred twenty-one employees because the Buckeye Union policy was the only policy that covered governmental automobile liability, and Part V extended automobile liability coverage to "any auto" used by a county employee.

Unlike Part V (the automobile coverage under the Buckeye Union policy), Part VI (the general liability coverage that is the sole issue in this case), clearly did not cover four hundred twenty-one employees. Instead, the facts reveal that Part VI covered only the direct employees of the Board of Commissioners, which did not include employees of the Sheriff's Department. The American Home policy already covered personal injuries for which the Sheriff's Department would be liable. Another policy covering such injuries would have been duplicative.

Even more convincing, the premiums that the board paid for

bodily injury coverage under the general liability section of the Buckeye Union policy were far too low to cover four hundred twenty-one people. The record reveals that the board paid annual premiums of only $2,929 for bodily injury coverage under the general liability section, which included no deductible. There is no doubt that the premium for bodily injury coverage of four hundred twenty-one people would have been much higher.

The premium that the board paid for bodily injury coverage was especially low when compared to the annual premium that the Sheriff's Department paid under the American Home policy for personal injury coverage of only sixty-two employees. The Sheriff's Department had to pay annual premiums of over $10,000, with a $1,000 deductible, for only sixty-two employees. Moreover, the American Home policy had much lower coverage limits than the Buckeye Union policy. The American Home policy had limits of $100,000 for each person and $300,000 for each incident. The bodily injury portion of the Buckeye Union policy covered up to $1,000,000 for each occurrence. Therefore, if the majority opinion is correct, the board, compared with the premiums the Sheriff's Department paid under the American Home policy, would have paid Buckeye Union less than one-third in premiums to get ten times the coverage, with no deductible, for nearly seven times as many employees. Such terms are just too good to be true. Clearly, the general liability section of the Buckeye Union policy covered fewer than four hundred twenty-one people.

The majority opinion also states that "Buckeye Union analysts believed that Buckeye Union was liable under the terms of its policy." This statement is also inaccurate. Only a single local adjuster, who apparently had no legal background and no authority to make coverage decisions, thought that Buckeye Union was liable under the policy. Responsible Buckeye Union officials, who had authority to make coverage decisions, concluded that the policy did not cover the Sheriff or any of the sheriff's deputies.

It is very clear to me that the insurance policy issued by Buckeye Union provided no general liability coverage for the actions of the Erie County Sheriff's Department or any of its deputies. In light of the foregoing analysis, I think it borders on outrageous that a "bad faith" claim could survive a directed verdict. We have deprived Buckeye Union of due process of law in this matter.

For the foregoing reasons, I would affirm the decision of the court of appeals regarding the coverage issue.

Moyer, C.J., concurs in the foregoing opinion.

FOOTNOTE:

1 A concurrence argues that the Buckeye Union policy provides coverage for Deputy Smith (and the whole Sheriff's Department for that matter), because the board's bid specifications stated that the named insured would be the board and Erie County officers and employees. However, the concurrence overlooks the fact that the policy itself omits the words "Erie County" as a modifier to the word "employee." As previously noted, the Board of County Commissioners is the only "named insured" under the plain language of the policy, and the policy merely covers "any employee of the named insured." If anything, the deletion of the words "Erie County" between the

time of the bid specifications and the final terms of the policy suggests that the policy provides coverage only for direct employees of the board, not all employees of the entire county of Erie.