DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Fulton County Court of Common Pleas which, following a jury trial, found in favor of appellee, Motorists Mutual Insurance Company ("Motorists Mutual"), with respect to appellants' causes of action. For the reasons that follow we affirm the decision of the trial court.
Appellants, Jeff and Cathy Stiriz, operated a business at 127 West Linfoot Street, Wauseon, Ohio, called Deryle's Auto Care. This business was insured with a commercial insurance policy issued by Motorists Mutual, which included both a Commercial Property Coverage Form and a Commercial Garage Coverage Form. Jeff Stiriz's father, Deryle Stiriz, however, actually owned the Linfoot Street property; whereas the adjacent property, 861 North Fulton Street, was owned by appellants and insured by Frankenmuth Insurance Company ("Frankenmuth"). Frankenmuth is not a party to this action. Additionally, appellants had a homeowners' insurance policy with Motorists Mutual on their residence at 404 Superior Street, Wauseon, Ohio.
On September 19, 1997, a severe rain storm allegedly caused a petroleum substance to leak out of an underground storage tank ("UST"). The UST was located entirely on appellants' Fulton Street property. The cap to the pipe leading from the UST was later found in some bushes on the property. No one knows how the cap was removed; however, there was some speculation that a riding lawnmower with a blade attached to the front of it, which had recently leveled the driveway, could have knocked the cap off, or the cap was possibly removed by vandals.
The petroleum substance leaked onto the Fulton Street property and surrounding properties, as well as into some city owned sewer systems, which ran beneath both the Linfoot and Fulton Street properties and beyond. Appellants were ordered by the Ohio Environmental Protection Agency to clean up these properties, which included the removal of the UST, flushing of city storm lines, and removal of contaminated soil and grass. The total cost of cleanup was allegedly in excess of $73,246. Appellants received $10,000 from Frankenmuth toward the cost of cleanup. Motorists Mutual denied coverage.
For purposes of this appeal, the pertinent portion of the commercial policy, the Building and Personal Property Coverage section, states as follows. Coverage is provided for direct physical loss of or damage to covered property:
"A. COVERAGE
 "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."
 "Covered Property" includes the buildings on the Linfoot property and any type of personal property on the premises, but does not include paved surfaces, cost of excavations, grading, backfilling or filling, the land or lawn, or underground pipes and drains on the premises.
The policy also provides "Additional Coverage" for pollutant clean up and removal, which includes the expense to extract pollutants from land or water on the Linfoot property, so long as the discharge, dispersal, seepage, migration, release or escape of the pollutants was caused by or resulted from a covered cause of loss:
"d. Pollutant Clean Up and Removal
 "We will pay your expense to extract `pollutants' from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the `pollutants' is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.
 "This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of `pollutants'. But we will pay for testing which is performed in the course of extracting the `pollutants' from the land or water.
 "The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy."
According to the policy, "Covered Cause of Loss" means risks of direct physical loss, but does not include "loss or damage caused by or resulting from" the "discharge, dispersal, seepage, migration, release or escape of `pollutants' unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the `specified causes of loss'." Specified causes of loss include, in part, lightning, windstorm or hail, vehicles, vandalism, sinkhole collapse, falling objects, weight of snow, ice or sleet, and water damage (which does not include rain).
On August 16, 1999, appellants sued Motorists Mutual and claimed a right to coverage, pursuant to both the commercial policy and the homeowners' policy, for damages associated with the release of the petroleum-based pollutant. With respect to both policies, appellants claimed breach of contract and "bad faith."
Appellants filed a number of motions prior to trial. On September 6, 2000, appellants filed a motion for partial summary judgment against Motorists Mutual requesting the trial court to determine that Motorists Mutual was required to provide coverage pursuant to its commercial policy, which included coverage for "Pollution Clean Up and Removal." On December 1, 2000, appellants filed a motion in limine requesting that the trial court preclude Motorists Mutual "from offering into evidence any extrinsic evidence or argument tending to establish the meaning of any ambiguous term or condition" of the policies. Also, on December 1, 2000, appellants filed a motion requesting "judicial construction" of two clauses in the commercial policy. Specifically, appellants moved the trial court to determine whether the "Pollutant Clean Up and Removal" clause and the "Cause of Loss-Special Form" exclusion, when read in conjunction, were clear and unambiguous or whether they were ambiguous and thus needed to be construed in favor of the insureds.
Motorists Mutual filed a response to appellants' motions on December 11, 2000. Motorists Mutual argued that appellants were not entitled to coverage pursuant to the commercial policy because (1) the UST was entirely located on the Fulton Street property, not on the Linfoot property, and was not associated with the business on the Linfoot property; (2) there was no physical damage to appellants' building or any personal property located on the Linfoot property; (3) appellants failed to establish a right to recovery because they failed to allocate what portion of the cost of cleanup was incurred solely for the Linfoot property; and (4) the commercial policy excluded coverage for loss due to pollution involving property owned by appellants, i.e., the Fulton Street property. With respect to the residential/homeowners' policy, Motorists Mutual argued that there was no coverage for any liability arising out of or in connection with the businesses located on the Linfoot and Fulton Street properties. In fact, Motorists Mutual asserted that the only insured location under the homeowners' policy was the residence, located on Superior Street.
Appellants replied on December 15, 2000, and argued that they had made a claim under their homeowners' policy. Appellants also asserted that Motorists Mutual's denial of coverage letter did not cite to or rely upon any of the claimed exclusions under the homeowners' policy and, hence, Motorists Mutual should be barred from asserting any exclusion.
On December 19, 2000, the trial court entered its judgment entry regarding appellants' motions. The trial court held that appellants were not entitled to coverage pursuant to the homeowners' policy. With respect to the commercial policy, the trial court rendered the following decision:
 "It appears that the Commercial Policy language, however, is broad enough to provide coverage for Plaintiffs. If there is any ambiguity, it must be construed in favor of the Stirizs and against the Defendant. Accordingly Plaintiffs will be allowed to present their case regarding covered `extraction' costs, and any associated claims for `bad faith,' and the Court so finds and so rules."
Following the trial court's decision, the matter proceeded to trial. The jury held that appellants were not entitled to coverage and found in favor of Motorists Mutual on appellants' claim for lack of good faith. Judgment was entered on February 1, 2001.
On February 13, 2001, appellants filed a motion for judgment notwithstanding the verdict or, alternatively, for new trial. Appellants' motion was denied on March 5, 2001. The trial court held that there was substantial evidence to support Motorists Mutual's side of the case and that appellants failed to establish any ground for relief pursuant to Civ.R. 59.
Appellants timely appealed the judgment of the trial court and raise the following assignments of error:
 "1. THE TRIAL COURT ERRED IN FAILING TO CONSTRUE, AS A MATTER OF LAW, THE POLICY CLAUSE PROVIDING `ADDITIONAL COVERAGE' FOR `EXPENSES TO EXTRACT POLLUTANTS FROM LAND OR WATER;' ERRED FURTHER IN FAILING TO RESOLVE AMBIGUITIES IN THAT LANGUAGE IN FAVOR OF COVERAGE FOR THE INSUREDS; AND ERRED FURTHER IN WITHDRAWING AT TRIAL THE COURT'S OWN PRETRIAL COVERAGE DETERMINATION AND SUBMITTING TO THE JURY FOR ITS DETERMINATION THE ISSUE OF INSURANCE COVERAGE FOR POLLUTANT EXTRACTION EXPENSES.
 "2. THE TRIAL COURT ERRED IN FAILING TO CONSTRUE AS A MATTER OF LAW THE UNDEFINED POLICY TERM `VEHICLE' AS INCLUDING A MOTORIZED RIDING LAWNMOWER; ERRED IN PRECLUDING THE INSUREDS' FROM INTRODUCING AT TRIAL A WEBSTER'S GATEWAY DICTIONARY DEFINITION OF THAT UNDEFINED POLICY TERM; AND ERRED IN PERMITTING THE INSURANCE CARRIER TO PRESENT EXTRINSIC EVIDENCE AND ARGUMENT TO THE JURY WHICH WAS CONTRARY TO THE DICTIONARY DEFINITION OF THE UNDEFINED POLICY TERM `VEHICLE'.
 "3. THE TRIAL COURT ERRED IN PERMITTING THE INSURANCE CARRIER TO RAISE AFFIRMATIVE DEFENSES OF POLICY EXCLUSIONS AT TRIAL WHICH HAD NEITHER BEEN PLED IN ITS ANSWER NOR DISCLOSED TO THE INSUREDS IN THE CARRIER'S RESPONSES TO AN INTERROGATORY WHICH HAD EXPLICITLY REQUESTED DELINEATION OF ALL SUCH POLICY EXCLUSIONS.
 "4. THE TRIAL COURT ERRED IN DISMISSING PRIOR TO TRIAL, SUA SPONTE AND WITHOUT ANY DISMISSAL MOTION PENDING, THE INSUREDS' COVERAGE CLAIM UNDER THEIR HOMEOWNERS' POLICY, AND ERRED FURTHER IN FAILING TO GRANT SUMMARY JUDGMENT TO THE INSUREDS ON THAT CLAIM.
 "5. THE TRIAL COURT ERRED IN FAILING TO ORDER A NEW TRIAL AS TO THE INSUREDS' TORT CLAIMS."
In their first assignment of error, appellants argue that the trial court erred in failing to construe, as a matter of law, the policy clause providing "additional coverage" for "expenses to extract pollutants from land or water" and erred in submitting the issue to the jury for its determination. Specifically, appellants allege that the trial court withdrew, on the morning of trial, its prior determination in its December 19, 2000 decision, that Motorists Mutual was required to provide coverage to appellants, and then improperly submitted the issue to the jury for its determination. Appellants additionally argue that (1) the trial court violated settled contract construction rules by having the jury, rather than the trial court, determine what coverage was provided under the terms of the policy; (2) the trial court should have determined as a matter of law that appellants were entitled to coverage under Motorists Mutual's policy for pollutant extraction expenses; (3) the competing provisions of the "pollution exclusion" and "additional coverage" sections of the policy should have been "reconciled" by the trial court and found not to exclude "pollution extraction costs," but, rather, only to exclude "damage to (i.e. diminution of value of) covered property caused by the escape of pollutants" or, alternatively, the trial court should have found the two provisions to be ambiguous and should have construed the policy terms in appellants' favor; (4) the pollution exclusion clause is so broad and general as to subsume all coverage, thereby rendering the coverage language meaningless, contrary to public policy, and unenforceable; and (5) this court should adopt a proposition of law that allows for coverage when the specific cause of an insured's loss is undetermined and indeterminate, but may have been caused in any of several ways which are covered losses.
In response to appellants' first assignment of error, Motorists Mutual argues that the trial court did not reverse its December 19, 2000 decision on the morning of trial:
 "[The trial court's decision] did not find that there had been a breach of contract, nor did it find that there had been a lack of good faith by Motorists Mutual. Rather, it found that the commercial policy issued by Motorists Mutual was applicable to the situation, but that the homeowners' policy was not, and that the case would proceed to jury trial to determine whether there was a breach of the commercial policy and any associated claim for bad faith."
Appellants are correct that the construction of an insurance contract is, in the first instance, a matter of law for the trial court to determine.[1] Nevertheless, juries are allowed to decide related factual matters to determine whether a policy provides coverage.[2]
Based upon the policy language in the commercial policy in this case, the trial court concluded that the policy was "broad enough to provide coverage." Hence, the trial court concluded, as a matter of law, that the policy generally applied to the situation in this case. However, to determine whether appellants qualified for coverage under the specific provisions of the policy, appellants had to prove the existence of certain facts. For instance, at a minimum, appellants had to prove that the discharge, dispersal, seepage, migration, release or escape of the pollutants was caused by or resulted from any "Specified Cause of Loss," such as, windstorm or hail, vehicles, vandalism, falling objects, etc.
Due to the factual issues, the trial court was incapable of determining, as a matter of law, that appellants were entitled to coverage for pollutant extraction expenses. As such, we find that the trial court properly allowed the issues of breach of contract and bad faith to be presented to the jury for it to make the necessary factual determinations. We further find that the trial court did not violate settled contract construction rules by having the jury determine, based upon the facts the jury found to be present, whether appellants were entitled to coverage.
Moreover, we note that appellants failed to object to the trial court's presentation of the issue of coverage to the jury. In fact, appellants themselves presented the jury with the relevant policy language and offered expert testimony to assist the jury with understanding the policy terms and reaching its conclusions. Generally in civil cases, errors which arise during the course of the proceedings and are not brought to the attention of the trial court by objection, or otherwise, at the time when such error could have been avoided or corrected, are waived and may not be reviewed on appeal.[3]
With respect to appellants' arguments concerning the trial court's duty to determine the policy language as a matter of law, beyond that which it had already done in its December 19, 2000 judgment entry, we find that appellants never raised any objections in this regard and therefore also waived this issue on appeal.[4] Additionally, we note that appellants did not file this as an action for declaratory judgment.
Furthermore, we find that the policy language regarding pollution exclusion is clear and unambiguous. Certain factual findings need to be considered on a case by case basis to determine whether coverage applies; however, this does not render the provision ambiguous. Moreover, we find that the pollution exclusion is not so broad and general as to eliminate all pollution coverage, thereby rendering the coverage language meaningless, against public policy, or unenforceable.
Finally, we find no basis to afford appellants coverage, in this instance, where they are unable to prove the source of the loss. There was a valid contract in effect. Pursuant to the contract, there were certain threshold requirements that had to be met before coverage would be provided for appellants' losses. The jury simply found that the facts in this case did not satisfy these requirements. To find as appellants suggest would render the terms of the contract meaningless.
Based on the foregoing, we find appellants' first assignment of error not well-taken.
In appellants' second assignment of error, they assert that the trial court erred in failing to construe, as a matter of law, that the undefined policy term "vehicle" included a motorized riding lawnmower. Additionally, appellants assert that the trial court erred in precluding appellants from introducing at trial a Webster's Gateway dictionary definition of that undefined policy term and erred in permitting Motorists Mutual's witness to testify regarding his opinion of whether a lawnmower is a "vehicle," when such opinion was contrary to the dictionary definition.
This issue arises because, in order for appellants to be entitled to coverage under the commercial policy, they had to establish that their loss was the result of or caused by a specified cause of loss. Appellants suggested that the cap for the UST could have been knocked off by a riding lawnmower that had leveled the parking lot shortly before the UST overflowed. Riding lawnmowers are not listed as a specified cause of loss; however, "vehicles" are listed. The term "vehicles" was not defined by the policy.
When there are undefined terms in a policy, we look to the plain and ordinary meaning of the language used in the policy.[5] Dictionary definitions can aid in determining a term's plain and ordinary meaning; however, there is no requirement that a dictionary definition be used, or that a particular dictionary's definition be used. Rather, the trial court correctly instructed the jury to give the word "vehicle" its plain and ordinary meaning.
Appellants additionally argue, however, that the trial court erred by permitting Motorists Mutual's witness to testify regarding the meaning of the word "vehicle," and his opinion of whether a lawnmower is a vehicle. We note that appellants' counsel elicited this testimony from John Malkoski on cross-examination. Accordingly, appellants cannot appeal an alleged error that they invited.[6] Appellants' second assignment of error is therefore found not well-taken.
In their third assignment of error, appellants argue that the trial court erred in permitting Motorists Mutual to raise affirmative defenses of policy exclusions at trial which had neither been pled in its answer nor disclosed to the insureds in the carrier's responses to interrogatories. Motorists Mutual responds that appellants never asserted in their answers to interrogatories that they sought coverage pursuant to the Garage Coverage portion of the commercial policy and that appellants raised a claim for liability coverage pursuant to the Garage Coverage for the first time at trial. As such, Motorists Mutual argues that the trial court properly allowed it to assert the applicable exclusions in defense of appellants' claims. Moreover, Motorists Mutual argues that it, in fact, did assert as an affirmative defense that the loss was not covered under either policy and that appellants' claims were "excluded by the provisions of the policies in question."
We find that the trial court correctly permitted Motorists Mutual to present a defense to appellants' claim for coverage pursuant to the Garage Coverage portion of the commercial policy. There is no indication in the record prior to trial that appellants specifically sought liability coverage pursuant to the Garage Coverage portion of the policy. Moreover, appellants were notified that it was Motorists Mutual's position that exclusions in the policy excluded coverage. Appellants also argue that the trial court should have made a determination as a matter of law concerning whether appellants were entitled to Garage Coverage. Appellants represent that they requested the court to make such a determination. We find no such request in the record. Although appellants requested the trial court to enter a directed verdict on the issue of the duty to defend, appellants never clearly requested the court to declare what coverage was provided pursuant to the Garage Coverage portion of the policy. Accordingly, we find that appellants waived their right to raise this as an issue on appeal as they failed to present this alleged error to the trial court during the proceedings.[7]
Accordingly, we find appellants' third assignment of error not well-taken.
In their fourth assignment of error, appellants argue that the trial court erred in dismissing, prior to trial and without any pending dismissal motion, their claim for coverage pursuant to the homeowners' policy. Additionally, appellants argue that the trial court failed to grant appellants summary judgment on that claim.
In addition to the commercial policy, appellants sought coverage pursuant to their homeowners' policy with Motorists Mutual. The homeowners' policy states that it covers the dwelling on the "residence premises," which is located at 404 Superior Street.
On December 11, 2000, Motorists Mutual argued that liability arising out of or in connection with a business engaged in by appellants, which would include any liability arising out of either the Linfoot or Fulton Street properties, would be excluded from coverage under the residential policy. In fact, Motorists Mutual asserted that the only insured location under the homeowners' policy was the residence, located on Superior Street. Appellants replied on December 15, 2000.
Accordingly, we find that the matter was presented to the trial court for its consideration. We also find that appellants were given an opportunity to fully respond to Motorists Mutual's arguments concerning the homeowners' policy, but limited their response to arguing that they had sought homeowners' coverage and that Motorists Mutual failed to specify what exclusions applied.
Moreover, we find that the trial court correctly determined that the homeowners' coverage does not apply to the facts in this case. Accordingly, we find appellants' fourth assignment of error not well-taken.
In their fifth assignment of error, appellants argue that the trial court erred in failing to order a new trial as to appellants' tort claims. We disagree. Appellants failed to establish that they were entitled to coverage pursuant to the commercial policy. Accordingly, the jury correctly found in favor of Motorists Mutual on appellants' claim of lack of good faith. Moreover, we find that the trial court correctly held that appellants failed to establish any reason justifying a new trial pursuant to Civ.R. 59. Appellants' fifth assignment of error is therefore found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Fulton County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.
[1] Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus.
[2] Leber v. Smith (1994), 70 Ohio St.3d 548, 553.
[3] Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121; LeFort v.Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123; Civ.R. 51(A).
[4] Id.
[5] Alexander, 53 Ohio St.2d at paragraph two of the syllabus.
[6] Lester v. Leuck (1943), 142 Ohio St. 91, paragraph one of the syllabus.
[7] See Goldfuss, supra.