OPINION
{¶ 1} This is an appeal from the granting of a Civil Rule 56 motion of Appellee by the Court of Common Pleas of Holmes County and a denial of a similar motion by Appellants.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} The facts are that on September 8, 1990, Raphael Durant, husband of Frances Durant, was killed in an automobile accident as a result of the negligence of one Kurt Miller.
{¶ 3} Westfield Insurance Co., pursuant to its policy with Mr. Miller, issued payment to the full extent of the monetary limits thereof.
{¶ 4} This action seeks additional coverage on behalf of the next of kin of Raphael Durant from Appellee Buckeye Union Ins. Co. pursuant to a comprehensive business policy carried by the Roman Catholic Diocese of Cleveland.
{¶ 5} Mr. Durant was not employed by such Diocese at the time of his death.
{¶ 6} However, until November 29, 1976, he had been serving as an ordained priest thereof.
{¶ 7} On such date, he had resigned as a priest without completing a process of permitted withdrawal referred to as laicization.
{¶ 8} Thereafter, he married Frances Durant.
{¶ 9} Revised Special Endorsement A of the policy between Appellee and the Diocese provided:
{¶ 10} "The Roman Catholic Diocese of Cleveland, Ohio and each entity named in the `List of Entities' as per filed with the Company, any corporation, firm, organization or any other legal entity owned by, or operated by the Diocese of Cleveland, Ohio; all priests, brothers, religious and clergy of the Diocese of Cleveland. (Emphasis added)"
{¶ 11} According to the tenets of the Roman Catholic Church, the deceased was still considered to be a priest, although not authorized to act or perform any duties as such within the Diocese nor was he listed on the roster of priests.
{¶ 12} Both parties filed motions for summary judgment with, as stated, that of Appellee being sustained and Appellants' motion denied.
{¶ 13} The Assignments of Error are:
 ASSIGNMENTS OF ERROR
{¶ 14} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS, FRANCIS [SIC] DURANT, ETC., ET AL., BY ENTERING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT-APPELLEE, THE BUCKEYE UNION INSURANCE COMPANY.
{¶ 15} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFFS-APPELLANTS, FRANCIS [SIC] DURANT, ETC., ET AL., BY NOT ENTERING SUMMARY JUDGMENT IN THEIR FAVOR AGAINST THE DEFENDANTA-PPELLEE, THE BUCKEYE UNION INSURANCE COMPANY."
{¶ 16} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc.
(1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) states, in pertinent part:
{¶ 17} "Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of vidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
{¶ 18} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280.
{¶ 19} It is based upon this standard we review appellant=s assignments of error.
 I, II.
{¶ 20} We shall first address the First and Second Assignments of Error simultaneously as they both challenge the trial court's ruling on the respective motions for summary judgment.
{¶ 21} A denial of a motion for summary judgment does not determine the action and prevent a judgment. Thus, such a denial is not a final order pursuant to R.C. § 2505.02. Celebrezze v.Netzley (1990), 51 Ohio St.3d 89, 90.
{¶ 22} Therefore, the denial of the summary judgment motion of Appellant is not reviewable by this court and the Second Assignment is accordingly rejected.
{¶ 23} The principal argument of Appellants with regard to coverage of Raphael Durant as a priest under special endorsement A of the policy issued by Appellee is premised upon the definition of a priest sacramentally or in a juridical sense.
{¶ 24} The testimony of Fr. Lawrence Jurcak, JCL, in his deposition taken as upon cross-examination on behalf of Appellants' reviews this distinction on pages 10 and 11 and is in part as follows:
{¶ 25} "What do you mean by active ministries?
{¶ 26} "Someone recognized, who is in good standing with the church.
{¶ 27} "If someone is not recognized as being in good standing, is [SIC] that mean that they are not a priest?
{¶ 28} "Sacramentally, yes. Able to exercise juridical rights and responsibilities, no.
{¶ 29} "Explain that to me.
{¶ 30} "Sacramentally by ordination the Catholic tradition, once there are three sacraments that once you receive those three sacraments that would be baptism, confirmation or orders. There would be three levels of orders, diaconate, a deacon, priest or bishop. Those sacraments cannot be repeated, because we say they give an indelible character or mark to the person.
{¶ 31} "However, in orders we say that there are, there is the sacramental reality of orders, but there is also the juridical element and the juridical element the ability to exercise the rights and the responsibilities and obligations that go with, that require that the priest be in good standing, therefore, he follows the discipline of the church.
{¶ 32} "So I take it that a priest could be not recognized as being in good standing, yet be recognized as a priest by the diocese relative to sacramental element?
{¶ 33} "Correct.
{¶ 34} "But he can also then not be recognized as being in good standing and not be considered a priest for the juridical element?
{¶ 35} "Correct."
{¶ 36} Because Raphael Durant, in the religious tenets of the Roman Catholic Church, considers a person to be permanently a sacramental priest once ordained, unless laicized, Appellants conclude that Special Endorsement A included Raphael Durant under the classification of an inactive priest (Brief p. 10) and therefore within the context of course and scope of employment under paragraphs 2 and 3 of Westfield Ins. Co. v. Galatis
(2003), 100 Ohio St.3d 216, even though not performing any duties, nor permitted to perform any priestly duties in the Diocese of Cleveland at the time of his death.
{¶ 37} We disagree.
{¶ 38} "Common words appearing in a written instrument will be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Alexander v.Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241.
{¶ 39} Nationwide Mutual Fire Insurance Company v. GumanBrothers Farm, et al. (1995), 73 Ohio St.3d 107:
{¶ 40} "Court must give undefined words used in insurance contract heir plain and ordinary meaning.
{¶ 41} "Mere absence of definition in insurance contract does not make meaning of term ambiguous."
{¶ 42} The American Heritage Dictionary of the EnglishLanguage, Fourth Edition, 2000, states the definition of "priest" as follows:
{¶ 43} "1. In many Christian churches, a member of the second grade of clergy ranking below a bishop but above a deacon and having authority to administer the sacraments.
{¶ 44} "2. A person having the authority to perform and administer religious rites."
{¶ 45} Clearly, Raphael Durant was not authorized to perform and administer religious rites.
{¶ 46} Appellants are attempting by this circuitous reasoning to require that Appellee be conversant with the totality of the philosophical religious concepts of the term "priest" of the Roman Catholic Church in preparing its insurance contract rather than construing such designation in accordance with the plain, ordinary meaning thereof which would meet the intent of the contracting parties. Further, Appellants attempt to apply the term "inactive" priest to the position that Raphael Durant had chosen prior to the time of his death. Mr. Durant was not an inactive priest such as one who could not perform his duties because of illness of retirement.
{¶ 47} As the interpretation of an insurance contract involves a question of law to be decided by the judge, the finding of ambiguity or lack thereof falls within his province. Leber v.Smith (1994), 70 Ohio St.3d 548.
{¶ 48} The Court here found no ambiguity and we determine that no abuse of discretion occurred as to such ruling.
{¶ 49} The facts are clear that the was no longer authorized to act as a priest of the Diocese of Cleveland and was not within the scope of employment, and therefore not within the ordinary meaning to be given to the term "priest" as used in Special Endorsement A.
{¶ 50} We need not consider the alternate basis asserted by Appellee.
{¶ 51} The First and Second Assignments of Error are rejected.
{¶ 52} This cause is affirmed at Appellant's costs.
By: Boggins, J. Farmer, P.J. and Edwards, J. concurs.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Holmes County Court of Common Pleas is affirmed. Costs assessed to appellants.