DECISION.
Plaintiffs-appellants, Katrice and Yolanda Roper (the "Ropers"), individually and as executor of the estate of Vivian Roper, deceased, appeal the January 24, 2001, decision by the trial court denying their motion for summary judgment and granting summary judgment in favor of defendant-appellee State Automobile Mutual Insurance Co. ("State Auto"). For the following reasons, we reverse the judgment of the trial court and remand the cause for further consideration not inconsistent with this opinion.
On September 18, 1999, Vivian Roper ("the decedent") was involved in a fatal automobile accident. The driver of the automobile that struck and killed the decedent was defendant Otis Hill III. The owner of the vehicle driven by Hill was defendant Vanessa Maddox. According to the Ropers' complaint, Hill did not possess automobile insurance. The automobile was, however, insured by Maddox through defendant Progressive Insurance Agency Inc. ("Progressive"). Progressive's insurance policy provided coverage in the amount of $12,500 per person and $25,000 per accident. Because the policy did not cover the total damages suffered, the Ropers sought underinsured motorist ("UIM") coverage under several different insurance policies. Pertinent to this review, we address the policy possessed by The Days Inn of Cincinnati ("Days Inn").
The decedent was an employee of Days Inn. At the time of the accident, Days Inn was insured under a commercial insurance policy with State Auto. The policy contained a provision for uninsured ("UM") and UIM coverage in excess of $1,000,000. Days Inn had also purchased an umbrella policy from State Auto that provided $1,000,000 in automobile liability coverage and $2,000,000 in general liability coverage. It is uncontested that, at the time of the accident, the decedent was not acting within the scope of her employment.
In the complaint filed by the Ropers, they alleged that, as beneficiaries of the decedent, they were entitled to UIM coverage under both the commercial insurance policy and the umbrella policy held by Days Inn. State Auto filed an answer along with a counterclaim for declaratory judgment, asserting that the decedent and the Ropers were not insureds under either the commercial or the umbrella policy.
Subsequently, State Auto filed a motion for summary judgment. State Auto asserted that the decedent was not an insured under the commercial policy, which clearly and unambiguously defined an "insured" as a business organization having no family members. State Auto further claimed that, because the umbrella policy supplemented the commercial policy, the terms concerning who was an insured were identical under both policies.
The Ropers also filed a motion for summary judgment as to State Auto's counterclaim. The Ropers relied on Scott-Pontzer v. Liberty Mut. FireIns. Co.[1] to support their contention that the decedent, as an employee of Days Inn, was an insured under the commercial policy because the language of the policy included not only Days Inn as a business entity but also the employees of Days Inn. The Ropers maintained that, because the decedent was an employee of Days Inn and because nothing in the contract mandated that coverage would exist only if employees were acting within the scope of their employment, UIM coverage should have been extended to the decedent and her heirs under the commercial policy. The Ropers also argued that the decedent was entitled to UIM coverage under the umbrella policy because the definition of an insured in the umbrella policy was ambiguous and because coverage arose by operation of law due to the policy's failure to comply with R.C. 3937.18.
The Ropers also filed a response to State Auto's motion for summary judgment. The Ropers again argued that, given the decedent's status as an employee of Days Inn, the decedent was an insured under that policy. Further, the Ropers argued that the umbrella policy was a separate policy from the commercial policy and had to comport with R.C. 3937.18. They argued that the decedent was an insured under the umbrella policy because the definition of an insured was ambiguous under that policy. Finally, the Ropers alleged that, because the umbrella policy did not provide UIM coverage, it arose by operation of law. In State Auto's response to the Ropers' motion for summary judgment, it emphasized that the language of the commercial policy differed significantly from the language found in the policy in Scott-Pontzer, because State Auto's policy specifically identified the circumstances upon which Days Inn employees were to be extended coverage. State Auto further argued that, because the underlying contract unambiguously defined who was insured, and because the umbrella policy incorporated the terms and definitions of the primary policy, the decedent could not recover under either the commercial or the umbrella policy.
The trial court granted State Auto's motion for summary judgment and denied the Ropers' motion for summary judgment. In the court's decision, it concluded "that the terms of Days Inn policy [the commercial policy] unambiguously name Days Inn as the insured; that the terms of the Days Inn policy exclude [the decedent] as an insured[;] and that coverage under Scott-Pontzer is inapplicable." The court further concluded that coverage under the umbrella policy was unavailable because the umbrella policy incorporated the terms, conditions, and exclusions of the underlying commercial policy.
The Ropers have timely appealed, asserting the following assignments of error. In the first assignment, the Ropers contend that the trial court erred in granting State Auto's motion for summary judgment. In the second assignment of error, the Ropers assert that the trial court erred in denying their motion for summary judgment. Because both assignments address the issue of whether the decedent was an insured under the commercial and the umbrella policies, we address them in the aggregate.
According to Civ.R. 56(C), summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party.[2] The moving party bears the burden of pointing out in the record where it is shown that no genuine issue of material fact remains.[3] Once the moving party satisfies its burden, the nonmoving party has the reciprocal burden of setting forth specific facts demonstrating that a genuine issue exists to be litigated.[4] On appeal, a reviewing court conducts a de novo review of the entry of summary judgment.[5]
The first issue before us is whether the provisions of R.C. 3937.18
applied to both the commercial and the umbrella polices. We begin our analysis with the observation that R.C. 3937.18 has been amended multiple times, notably on October 31, 2001, September 21, 2000, November 2, 1999, September 3, 1997, and October 20, 1994. "For the purposes of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties."[6]
It is uncontested that the effective period of the commercial policy was between April 30, 1999, and April 30, 2000, and that the effective policy period of the umbrella policy was between January 1, 1999, and January 1, 2000. Because the policies were entered into after the September 3, 1997, effective date of Am.Sub.H.B. No. 261 but prior to the November 2, 1999, effective date of Am.Sub.S.B. No. 57, we conclude that the Am.Sub.H.B No. 261 version of R.C. 3937.18 ("former R.C. 3937.18) governed this action. It is well established that if a policy includes automobile liability coverage, it must comport with R.C. 3937.18.[7]
Former R.C. 3937.18 provided in pertinent part as follows:
 No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
(1) Uninsured motorist coverage * * *
Underinsured motorist coverage * * *
In sum, former R.C. 3937.18 required that UM and UIM coverage be made available under automobile liability insurance polices.
{¶ 13} Pursuant to section (L), which was enacted in 1997 to narrow the scope of policies that had to include UM/UIM coverage,[8] the term "automobile liability or motor vehicle liability policy of insurance" meant the following:
 (1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
(2) Any umbrella liability policy of insurance.[9]
 By its terms, former R.C. 3937.18(L) required that a policy providing insurance for a motor vehicle and any umbrella policy had to comply with the provisions in section (A). Given that, we hold that former R.C. 3937.18(L)(1) applied to State Auto's commercial policy and former R.C. 3937.18(L)(2) applied to State Auto's umbrella policy. Because the statute clearly contemplated that an umbrella policy be treated separately from any underlying policy, we hold that State Auto was required to provide UM/UIM coverage under both the commercial and the umbrella policies.
 {¶ 14} We now address the issue of whether the decedent was, at the time of her death, an insured under either the commercial or the umbrella policy. The commercial policy provided UM/UIM coverage to those who were defined as "insureds." In defining who was an "insured," section B of the policy stated,
 (1) You, if a natural person, and any "family member." If you include a natural person or group of natural persons engaged in or functioning as a "business organization," it is understood and agreed that a "business organization" has no "family members," and no coverage is available for natural persons, except as otherwise set forth in Section B.2. and B.3. Who is An Insured, of this form. For the purpose of this section, "business organization" means any entity or association recognized under the Ohio Revised Code or otherwise acknowledged under common law or the statutory law of any other state, province, or country, other than a sole proprietorship.
Anyone else "occupying" a covered "auto" or a temporary substitute
 for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
 Anyone for damages he or she is entitled to recover because of "bodily
injury" sustained by another "insured."
 {¶ 15} To determine whether the terms of an insurance policy are ambiguous, a court must give terms and phrases their plain, ordinary, natural, or commonly accepted meaning.[10] Where a policy is clear and unambiguous, its interpretation is governed solely by the terms appearing in it, and a court cannot alter its provisions.[11] But where a policy is ambiguous, the ambiguity must be construed against the insurer and resolved in favor of the insured.[12] An insurance policy is ambiguous if its terms are subject to more than one reasonable interpretation.[13]
 {¶ 16} In Scott-Pontzer v. Liberty Mutual Fire Ins. Co.,[14] an employee of Superior Dairy, Inc., was killed in an accident while operating a motor vehicle outside the scope of his employment, and his heirs sought UM/UIM coverage under Superior Dairy's insurance policy. For the purposes of UM/UIM coverage, the policy defined an "insured" as the following: "(1) You[;] (2) If you are an individual, any family member[;] (3) Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction[;] (4) Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."[15] When considering the policy, the Ohio Supreme Court decided that the term "you" was ambiguous because it was subject to various interpretations.[16] Given the ambiguity and construing the policy strictly against the insurer, the court held that the term "you" referred to Superior Dairy employees.[17]
 {¶ 17} Like the policy in Scott-Pontzer, State Auto's commercial policy defined an "insured" as "you." But, unlike the policy inScott-Pontzer, State Auto attempted to clarify its definition of "you," particularly as it related to a "business." The problem with State Auto's definition was that, according to Scott-Pontzer, UM/UIM insurance coverage cannot be given solely to a corporation without regard to "live" persons. The court reasoned in Scott-Pontzer that UM/UIM protection cannot be limited solely to a corporate entity because a corporation acts by and through live persons, and, therefore, a corporation cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle.[18] According to Scott-Pontzer, when coverage is limited to a corporate entity, without regard to "live persons," it renders coverage meaningless.[19] By attempting to limit coverage to a corporate entity in this case, State Auto rendered that coverage meaningless. While State Auto attempted to extend coverage to "natural persons" in certain circumstances identified in Paragraphs B(2) and (3), the distinctions listed in those subsections were ambiguous. Paragraph B(2) was inapplicable here, but paragraph B(3) could be interpreted to apply to Days Inn employees, including the decedent. Given the ambiguity in the policy regarding what constituted a "business organization" and who was covered as a "natural person," we conclude that the language in State Auto's underlying commercial policy was ambiguous.
 {¶ 18} Construing the commercial policy against the insurer, we hold that the decedent was, at the time of her death, an insured. Having held that the decedent was an insured, we further hold that she was entitled to UM/UIM benefits, as nothing in the policy required Days Inn employees to be acting within the scope of their employment in order to receive UM/UIM coverage.[20] Accordingly, we conclude that the trial court erred in granting summary judgment to State Auto on the issue of whether the decedent was an insured under the commercial policy, and that the court should have granted the Ropers' motion for summary judgment on State Auto's counterclaim, which sought a judicial declaration as to the existence of coverage under the State Auto commercial policy.
 {¶ 19} Next, we consider whether the decedent was an insured under the umbrella policy. The trial court held that because the decedent was not an insured under the commercial policy, she was also not an insured under the umbrella policy.
 {¶ 20} Having already held that the decedent was, at the time of her death, an insured under the commercial policy, we hold that the trial court erred in granting summary judgment on the claims brought under the umbrella policy on the basis that the decedent was not an insured under the underlying policy. We, therefore, must independently review the umbrella policy to determine if the decedent was an insured under the terms of that policy. Having reviewed the umbrella policy, we conclude that nothing in the contract precluded the decedent from recovering.
 {¶ 21} It is well established that a valid insurance policy cannot be made that is contrary to a statute.[21] The Ohio Supreme Court has made clear that "[former] R.C. 3937.18 is the yardstick by which all exclusions of uninsured motorist coverage must be measured."[22] Thus, the validity of the exclusion under the umbrella policy in this case depended on whether the policy complied with former R.C. 3937.18. Where a policy did not comply with former R.C. 3937.18, the offending provisions have been rendered void.[23]
 {¶ 22} Pursuant to former R.C. 3937.18(A), UM/UIM coverage had to be provided under an umbrella policy unless there was an express waiver of coverage by the insured pursuant to former R.C. 3937.18(C), which provided the following in relevant part:
 A named insured or applicant may reject or accept both coverages as offered under division (A) of this section, or may alternatively select both coverages in accordance with a schedule of limits approved by the superintendent. * * * A named insured's or applicant's rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants.
 Where the named insured did not expressly reject UM/UIM coverage, it arose by operation of law.[24]
When UM/UIM coverage arose by operation of law, the coverage was not necessarily subject to the limits identified in the policy because there was nothing in the policy to limit the scope of the implied coverage.[25] Rather, the implied coverage could be broader than the liability coverage.[26]
 {¶ 23} Here, the umbrella policy explicitly excluded UM/UIM coverage. The exclusion applied relevant part to, "[a]ny obligation imposed by law under any automobile no-fault, uninsured motorist, underinsured motorist, workers' compensation, disability benefits or unemployment compensation law or any similar law." Because the validity of this exclusion affected whether the decedent was an insured, we must first determine whether the exclusion complied with former R.C. 3937.18(C).
 {¶ 24} Prior to the 1997 amendments, R.C. 3937.18(C) permitted a named insured to reject UM/UIM coverage, but the statute was silent on the form an offer and rejection had to take in order to satisfy the requirements of section (A). A body of case law evolved in light of the statute's silence.
 {¶ 25} In addressing the 1994 version of R.C. 3937.18(A) and (C), the Ohio Supreme Court held, in Gyori v. Johnston Coca-Cola BottlingGroup, Inc.,[27] that the insurer had to make a written offer of UM/UIM coverage, which had to be received in writing by the insured prior to the commencement of the policy year.[28] Once an offer of insurance was made, the insured could then reject UM/UIM coverage.[29] Under Gyori, an insurance company bore the cost of any misunderstanding that resulted where UM/UIM coverage arose by operation of law.[30]
 {¶ 26} The legislature responded to Gyori in 1997 when it amended the statute to the applicable version. Under former R.C. 3937.18(C), the legislature rejected the requirement that an offer be made first, as the statute provided that an insured could reject UM/UIM coverage in writing, and that the rejection implied that an offer had been made. Also, the 1997 legislative amendments rejected the requirement that the offer and rejection be made prior to the effective date of the policy. But the 1997 amendment did not address the issue of what constituted a valid rejection.
 {¶ 27} In 2000, the Supreme Court of Ohio addressed the issue of what constituted an express and knowing rejection of UM/UIM coverage under the 1994 version of R.C. 3937.18(C). In Linko v. Indemnity Ins.Co. of North America,[31] the court held that the four corners of the insurance policy controlled in determining whether a waiver of UM/UIM coverage had been made knowingly and expressly by the insured, and that extrinsic evidence was not admissible to prove that a waiver had been made knowingly and expressly.[32] Thus, by focusing on the policy itself, the court simplified the issue of proof: either the offer and rejection were in the contract or they were not.[33] The Linko court identified the elements that had to be in the policy: the insurer had to inform the insured of the availability of UM/UIM coverage, set forth the premium, describe the coverage, and state the coverage limits.[34]
 {¶ 28} The Ohio Supreme Court later certified two issues relating to the Linko decision: (1) whether Linko's requirements were applicable to the 1997 version of R.C. 3937.18 and, if the Linko requirements were applicable, whether a signed rejection acted as an effective rejection of UM/UIM coverage,[35] and (2) whether the presumption referred to in the 1997 version of the statute was rebuttable or conclusive.[36] But the court ultimately declined to answer the questions.
 {¶ 29} In the absence of an authoritative answer to the questions, we find Linko's holding applicable to this case.[37] In applying Linko to former R.C. 3937.18(C), we conclude that the four corners of the policy, at the very least, had to include a written rejection of UM/UIM coverage signed by the insured. The declarations page submitted by State Auto in the form of an affidavit provided the following: "IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PRVOIDE THE INSURANCE AS STATED IN THIS POLICY." While this declaration may have been intended as a waiver of UM/UIM coverage, a Days Inn representative did not sign the declaration or acknowledge it. Moreover, nothing in the declaration or elsewhere in the contract indicated that State Auto had made a valid offer of UM/UIM coverage. Given that, we conclude that the declaration did not constitute a valid rejection of UM/UIM coverage and voided the absence of such coverage. Because State Auto failed to satisfy the offer-and-rejection requirements of former R.C. 3937.18(C), we hold that UM/UIM coverage arose by operation of law under the umbrella policy.
 {¶ 30} Having concluded that UM/UIM coverage arose by operation of law; we must now determine whether the decedent and her heirs were insureds under the umbrella policy.
 {¶ 31} The umbrella policy provided that an insured was "any person or organization qualifying as such under Part B WHO IS AN INSURED for Coverage B and any person qualifying as such under `underlying insurance' for Coverage A." Under the policy, Coverage A was excess liability coverage and Coverage B was extended liability coverage. With no definition of who was an insured for the purposes of UM/UIM coverage under the umbrella policy, we conclude that none of the bargained-for definitions relating to liability coverage applied to UM/UIM coverage, which arose by operation of law. Accordingly we hold that, as an employee of Days Inn, the decedent was entitled to coverage under the policy.
 {¶ 32} Our holding that the decedent qualified as an insured under the umbrella policy is in accord with the Ohio Supreme Court's decision in the Scott-Pontzer case, where the court held that any restrictions written into a policy for the purposes of liability coverage do not apply where coverage arises by operation of law.[38]Like the umbrella policy in Scott-Pontzer, State Auto's umbrella policy defined who qualified as an insured in the context of excess liability coverage but not for purposes of UM/UIM coverage.[39] And even if we were to look to the commercial policy for a definition of who was an insured, as called for under the umbrella policy, given our reading of the underlying policy, we would still hold that the decedent was an insured. For the foregoing reasons, we conclude that the decedent was, at the time of her death, an insured under the umbrella policy even though the injuries she suffered occurred outside the scope of her duties as an employee of Days Inn.
 {¶ 33} Though the dictates of Scott-Pontzer and its progeny have since been superceded by the current version of R.C. 3937.18, the sweep of those rulings is binding upon us because the current statutory amendments were not in effect at the time the State Auto policy was effective. The basic purpose of former R.C. 3937.18 was to "protect persons injured in automobile accidents from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated."[40]
 {¶ 34} Accordingly, we hold that the trial court erred in granting summary judgment to State Auto under the umbrella policy because coverage arose by operation of law where no evidence demonstrated that Days Inn had rejected UM/UIM coverage. Furthermore, we hold that the trial court erred in refusing to grant summary judgment to the Ropers on State Auto's counterclaim, and to declare that the decedent was an insured under the umbrella policy.
 {¶ 35} The judgment of the trial court is, therefore, reversed, and this cause is remanded so that the trial court may determine the damages owed to the Ropers and enter a judgment in their favor in accordance with the terms of this decision.
Judgment reversed and cause remanded.
Gorman, P.J., Painter and Sundermann, JJ.
[1] 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
[2] See Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
[3] See Dresher v. Burt, 75 Ohio St.3d 280, 292, 1996-Ohio-107,662 N.E.2d 264.
[4] See Civ.R. 56(E); Vahila v. Hall, 77 Ohio St.3d 421, 429,1997-Ohio-259, 674 N.E.2d 1164.
[5] See Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E. 241.
[6] Ross v. Farmer's Ins. Group of Cos., 82 Ohio St.3d 281,1998-Ohio-381, 695 N.E.2d 732, syllabus.
[7] See Duriak v. Globe Am. Cas. Co. (1986), 28 Ohio St.3d 70, 72,502 N.E.2d 620, overruled in part on other grounds, in Miller v.Progressive Cas. Ins. Co., 69 Ohio St.3d 619, 1994-Ohio-160,635 N.E.2d 317.
[8] See Jump v. Nationwide Mut. Ins. Co., 2nd Dist. No. 18880, 2001-Ohio-1699.
[9] Subsection (L)(2) was later amended by S.B. No. 57 (effective Nov. 2, 1999) to read as follows: "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section." Subsection (L) was again amended by S.B. No. 97 (effective October 31, 2001) to eliminate any requirement of the mandatory offer of uninsured and underinsured motorist coverage.
[10] See Gomolka v. State Auto. Mut. Ins. (1982), 70 Ohio St.2d 166,167-168, 436 N.E.2d 1347.
[11] See Leber v. Smith, 70 Ohio St.3d 548, 553, 1994-Ohio-361, 639 N.E.2d 1159.
[12] See King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208,519 N.E.2d 1380, syllabus.
[13] See Hacker v. Dickman, 75 Ohio St.3d 118, 119-120, 1996-Ohio-98,661 N.E.2d 1005.
[14] 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116.
[15] Id. at 663.
[16] See id. at 664-665.
[17] See id. at 665.
[18] See id. at 664.
[19] See id.
[20] See id. at 665-666.
[21] Martin v. Midwestern Group Ins. Co., 70 Ohio St.3d 478, 480,1994-Ohio-407, 639 N.E.2d 438.
[22] Id. at 481.
[23] See id. at paragraph three of the syllabus.
[24] See Selander v. Erie Ins. Group, 85 Ohio St.3d 541, 545-546,1999-Ohio-287, 709 N.E.2d 1161; Scott-Pontzer, supra, at 665; Abate v.Pioneer Mut. Cas. Co. (1970), 22 Ohio St.2d 161, 165, 258 N.E.2d 429, paragraph two of the syllabus.
[25] See Selander v. Erie Ins. Group, supra; Shropshire v. EMC/HamiltonMutual Ins. Co. (Oct. 5, 2001), 2nd Dist. Nos. 18803 and 18814.
[26] See Selander v. Erie Ins. Group, supra, quoting Demetry v. Kim
(1991), 72 Ohio App.3d 692, 698, 595 N.E.2d 997; Scott-Pontzer, supra, at 665.
[27] 76 Ohio St.3d 565, 1996-Ohio-358, 669 N.E.2d 824.
[28] See id. at paragraphs one and two of the syllabus.
[29] See id. at 569.
[30] See id.
[31] 90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338.
[32] See id. at 450.
[33] Following Linko, R.C. 3937.18(C) was amended by S.B. No. 97, effective October 31, 2001, to eliminate any requirement of a written offer, selection, or rejection of underinsured and uninsured motorist coverage.
[34] See Linko v. Indemnity Ins. Co. of North America, supra, at 449.
[35] See Kemper v. Michigan Millers Mut. Ins. Co. (2001),93 Ohio St.3d 1483, 758 N.E.2d 184.
[36] See Comella v. St. Paul Mercury Ins. Co. (2001), 93 Ohio St.3d 1444,756 N.E.2d 100.
[37] Accord Still v. Indiana Ins. Co., 5th Dist. No. 2001CA00300, 2002-Ohio-1004, at ¶ 29; Pillo v. Stricklin, 5th Dist. No. 2001CA00203, 2002-Ohio-363; Raymond v. Sentry Ins., 6th Dist. No. L-01-1357, 2002-Ohio-1228, at ¶ 21. But, see, Martinez v. TravelersIns. Co. 9th Dist. No. 20796, 2002-Ohio-1979, at ¶ 29 (not applyingGyori or Linko to an action arising out of the 1997 amendments to R.C.3937.18); Purvis v. Cincinnati Ins. Co., 2nd Dist. No. 2001-CA-104, 2002-Ohio-1803 (rejecting Linko when concluding that a valid rejection may be rebutted).
[38] See Scott-Pontzer v. Liberty Mut. Fire Ins. Co., supra, at 665-666.
[39] Accord Butcher v. Lewis, 5th Dist. No. 2001CA00219, 2002-Ohio-1858.
[40] Abate v. Pioneer Mut. Cas. Co, supra, at 165.